827 A.2d 115

Eura DAWKINS

v.

**BALTIMORE CITY POLICE DEPARTMENT, et al.**

**No. 88, Sept. Term, 2002.**

Court of Appeals of Maryland.

June 19, 2003.

**54**

Charles Lamasa, Baltimore, for Petitioner.

Peter Saar, Deputy Legal Counsel, Office of Legal Affairs, Baltimore, for Respondents.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

ELDRIDGE, J.

This Court issued a writ of certiorari in the instant case primarily to review a Court of Special Appeals' holding that a government agency and government officials were entitled, under the so-called "collateral order doctrine," to prosecute an immediate appeal from interlocutory trial court orders overruling the defenses of sovereign immunity and public official immunity. We shall hold that such interlocutory orders are not immediately appealable under the collateral order doctrine, and we shall overrule the collateral order doctrine holding of *State v. Hogg*, 311 Md. 446, 535 A.2d 923 (1988), upon which the Court of Special Appeals relied.

## I.

The petitioner Eura Dawkins instituted this tort action in the Circuit Court for Baltimore City against the Mayor and City Council of Baltimore, the Baltimore City Police Department, the Police Commissioner of Baltimore City, Baltimore City Police Officer Casper J. Miller, and "one unidentified

Baltimore City Police Officer." The complaint, as amended, contained five counts sounding in negligence, negligent supervision, assault, battery, and violation of the plaintiff Dawkins's state constitutional rights protected by Article 24 of the Maryland Declaration of Rights.[1]

Since the present appeal was taken from orders denying motions to dismiss the plaintiff's amended complaint, the pertinent facts are those set forth in the amended complaint. The amended complaint, after identifying the plaintiff, the defendants, and the defendants' asserted responsibilities, contained, *inter alia,* the following allegations:

"5. On or about September 20, 1997, in the Fells Point section of Baltimore City, the Plaintiff was grievously injured as a direct and proximate result of the wrongful acts of the Defendant Miller and/or an Unidentified Police Officer, who at all relevant times were acting in the scope of their employment, as set forth hereinafter.

"6. On the above date, the Plaintiff, in the company of her brothers, sisters and others traveled to Fells Point for the purpose of going to a dance club.

"7. Upon leaving the club at or about closing time a brother of the Plaintiff exchanged words with a police officer with respect to an incident which had occurred a short time earlier when the brother had been sprayed in the eyes with pepper spray by a police officer.

"8. The exchange became heated and, ultimately, led to the arrest of several members of the Plaintiff's family.

"9. While the incident was unfolding the Plaintiff at all times maintained an orderly demeanor and did not in any way impede or obstruct the officers present in the performance of their duty. Despite this fact, for reasons unknown to the Plaintiff, the Defendant Miller and/or the Unidenti-

---

1. Article 24 provides as follows:

"That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

fied Police Officer, without any cause or justification, maliciously, with ill will and the desire to inflict injury upon the Plaintiff, approached from the rear, placed his koga stick against the neck of the Plaintiff and, with great force, flung the Plaintiff to the ground.

"10.   The Plaintiff immediately felt great pain in the area of her neck and promptly sought medical care for her injuries.

"11.   As a direct and proximate result of the negligence of the Defendants as alleged aforesaid the Plaintiff has suffered extensive medical treatment, including, but not limited to, medical appointments, physical therapy and surgery for the fusion of two vertebrae in her neck.   Plaintiff suffered extreme fear.   She has suffered extreme shock to her nerves and nervous system.   She has incurred medical expenses in the past, present and future.   She has suffered a loss of earnings and earning capacity.   She has endured extreme pain and suffering and has suffered continuing mental distress as a direct and proximate result of being attacked without provocation by the Defendant Miller and/or the Unidentified Police Officer.

"12.   All of the injuries, losses and damages of the Plaintiff were caused solely by the negligent and/or intentional acts of the Defendant Miller and/or the Unidentified Police Officer, Defendant Police Department and/or Commissioner's agent, servant or employee without any negligence of the Plaintiff contributing thereto.

"13.   On information and/or belief, the Unidentified Police Officer had previously engaged in the use of excessive force against citizens, which fact was known, or should have been known by supervisory officials of the defendant Police Department and/or Commissioner who notwithstanding such actual or imputed knowledge, did not take such action as would have been taken by a reasonably competent Police Department and/or Commissioner acting under the same or

similar circumstances. Had such action been taken, the injuries to the Plaintiff would not have occurred."

The plaintiff sought both compensatory and punitive damages.

On June 2, 2000, the Mayor and City Council of Baltimore filed a motion to dismiss which was granted shortly thereafter.[2] Subsequently, at different times, the three remaining identified defendants filed numerous motions to dismiss which were all denied. The motions were primarily based on claims of "sovereign" immunity, "governmental" immunity, and public official immunity.

A "standard track scheduling order" was filed in February 2001. Nevertheless, the defendants, on March 23, 2001, filed a notice of appeal from orders of March 7, 2001, denying the defendants' motions to dismiss. Thereafter, proceedings in the Circuit Court were stayed.

The Court of Special Appeals, in an unreported opinion filed on August 2, 2002, held that the March 7, 2001, interlocutory orders were appealable under the collateral order doctrine as applied in *State v. Hogg, supra,* 311 Md. 446, 535 A.2d 923. On the merits, the intermediate appellate court vacated the Circuit Court's orders denying the motions to dismiss and instructed the Circuit Court "to enter judgments in favor of the appellants on all claims." The plaintiff filed a petition for a writ of certiorari which this Court granted. *Dawkins v. Baltimore Police,* 372 Md. 132, 812 A.2d 288 (2002).

## II.

Although the parties have chiefly briefed and argued the merits of the tort action, we shall not reach any of the

---

**2.** Neither the docket entries nor the record before this Court disclose whether the Circuit Court, by written order, issued the express determination required by Maryland Rule 2–602(b) to make this dismissal a final judgment. If the express determination under Rule 2–602(b) was not made, the order dismissing the Mayor and City Council of Baltimore is not final and, under Rule 2–602(a)(3), "is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties."

issues relating to the merits. The Circuit Court's orders were not appealable, and the Court of Special Appeals erred by entertaining the appeal.

As the Court of Special Appeals and the parties have acknowledged, the Circuit Court's orders denying motions to dismiss were not appealable as a final judgment terminating the case in the trial court and were not appealable interlocutory orders under Maryland Code (1974, 2002 Repl.Vol.), § 12–303 of the Courts and Judicial Proceedings Article, or under any other statute. The orders were appealable only if they fell within the collateral order doctrine.

A recent opinion by this court, *In re Foley*, 373 Md. 627, 633–634, 820 A.2d 587, 591 (2003), explained the collateral order doctrine as follows:

> "The 'collateral order doctrine "treats as final and appealable a limited class of orders which do not terminate the litigation in the trial court." ' *Bunting v. State*, 312 Md. 472, 476, 540 A.2d 805, 807 (1988), quoting *Public Service Comm'n v. Patuxent Valley*, 300 Md. 200, 206, 477 A.2d 759, 762 (1984). The doctrine is a very limited exception to the principle that only final judgments terminating the case in the trial court are appealable, and it has four requirements. As summarized by Judge Wilner for the Court in *Pittsburgh Corning v. James*, 353 Md. 657, 660–661, 728 A.2d 210, 211–212 (1999),
>
> > '[w]e have made clear, time and again, as has the United States Supreme Court, that the collateral order doctrine is a very narrow exception to the general rule that appellate review ordinarily must await the entry of a final judgment disposing of all claims against all parties. It is applicable to a "small class" of cases in which the interlocutory order sought to be reviewed (1) conclusively determines the disputed question, (2) resolves an important issue, (3) resolves an issue that is completely separate from the merits of the action, *and* (4) would be effectively unreviewable if the appeal had to await the entry of a final judgment. *See Peat & Co. v. Los Angeles Rams*, 284

Md. 86, 92, 394 A.2d 801, 804 (1978); *Clark v. Elza,* 286 Md. 208, 213, 406 A.2d 922, 925 (1979); *Shoemaker v. Smith,* 353 Md. 143, 725 A.2d 549 (1999).'

*See In re Franklin P.,* 366 Md. 306, 327, 783 A.2d 673, 686 (2001), where Judge Cathell for the Court recently emphasized: 'The four elements of the test are conjunctive in nature and in order for a prejudgment order to be appealable and to fall within this exception to the ordinary operation of the final judgment requirement, each of the four elements must be met.' *See also Jackson v. State,* 358 Md. 259, 266–267, 747 A.2d 1199, 1203 (2000).

"Furthermore, in Maryland the four requirements of the collateral order doctrine are very strictly applied, and appeals under the doctrine may be entertained only in extraordinary circumstances. *Pittsburgh Corning v. James, supra,* 353 Md. at 666, 728 A.2d at 214; *Shoemaker v. Smith, supra,* 353 Md. at 169, 725 A.2d at 563; *Bunting v. State, supra,* 312 Md. at 482, 540 A.2d at 809."

In *State v. Hogg, supra,* 311 Md. at 455–457, 535 A.2d at 927–928, this Court, for the first time, held that an interlocutory trial court order rejecting a sovereign immunity defense asserted by a state government agency was immediately appealable under the collateral order doctrine.[3]   The Court relied on the fourth requirement or element of the collateral order doctrine, namely that, if the state agency were required to stand trial, its claim of immunity from suit would be "effectively unreviewable" in an appeal from a final judgment. 311 Md. at 456, 535 A.2d at 928.   The Court explained (*ibid.*):

"From the standpoint of being 'effectively unreviewable' the erroneous rejection of sovereign immunity in bar of a claim is similar to the erroneous denial of the protection against standing trial for the second time which is embraced in the privilege against former jeopardy.   In that instance, an order denying a double jeopardy defense is immediately

---

**3.** The agency was the Maryland Deposit Insurance Fund Corporation, which was a unit within the Department of Licensing and Regulation.

appealable. *See Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977)."

The *Hogg* opinion also relied upon *Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982), and *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), in which the Supreme Court, as a matter of federal court appellate procedure, held that interlocutory orders rejecting immunity defenses asserted by the President of the United States and the Attorney General of the United States were immediately appealable under the collateral order doctrine because the orders would be " 'effectively unreviewable on appeal from a final judgment,' " 311 Md. at 456, 535 A.2d at 928, quoting *Mitchell v. Forsyth, supra,* 472 U.S. at 527, 105 S.Ct. at 2816, 86 L.Ed.2d at 425.

Within a few months after the decision in *State v. Hogg, supra,* this Court began to place major limitations upon *Hogg* 's collateral order holding. *Bunting v. State,* 312 Md. 472, 540 A.2d 805 (1988), involved an interlocutory ruling which, if erroneous, would have resulted in preventing a criminal defendant's trial and in requiring a dismissal of the charges. In this respect, the ruling was very similar to an order denying a double jeopardy defense. The defendant Bunting argued that the order was appealable under the collateral order doctrine because it would be effectively unreviewable in an appeal from a final judgment. In holding that the order was not appealable, this Court "recognized that, under the collateral order doctrine, an exception to the general rule of finality may well be limited to its own unique factual circumstances." *Bunting v. State, supra,* 312 Md. at 478, 540 A.2d at 807. The *Bunting* opinion, 312 Md. at 479–480, 540 A.2d at 808, went on to point out that a

"difficulty with the defendant's argument is that numerous 'rights' can readily be characterized as entitling a party to avoid trial under some circumstances. For example, the 'right' to summary judgment might be characterized as a right not to stand trial unless the opposing party has created a genuine issue of material fact. Similarly, the statute of limitations might be characterized as granting a

defendant a right not to be tried out of time. *See Mitchell v. Forsyth,* 472 U.S. 511, 550–551, 105 S.Ct. 2806, 2828–2829, 86 L.Ed.2d 411, 441 (1985) (Brennan, J., concurring in part and dissenting in part). If all 'rights' which could be characterized in this manner were treated like the right against double jeopardy, the collateral order doctrine would largely erode the final judgment rule. Consequently, it is important that we narrowly construe the notion of an entitlement not to be sued or prosecuted."

The Court in *Bunting* concluded that permitting interlocutory appeals because an order involves the right to avoid trial should be confined to a few extraordinary situations (312 Md. at 481–482, 540 A.2d at 809):

"In sum, the idea that an issue is not effectively reviewable after the termination of the trial because it involves a 'right' to avoid the trial itself, should be limited to double jeopardy claims and a very few other extraordinary situations. Otherwise, as previously indicated, there would be a proliferation of appeals under the collateral order doctrine. This would be flatly inconsistent with the long-established and sound public policy against piecemeal appeals."

Finally, the *Bunting* opinion noted that the "immunity from ... trial" language in *State v. Hogg, supra,* "must be read in the context of what was before the Court." 312 Md. at. 482 n. 9, 540 A.2d at 809 n. 9. The *Bunting* opinion essentially limited *Hogg* to its own facts. Moreover, a concurring opinion in *Bunting,* 312 Md. at 482, 540 A.2d at 809–810, took the position that *Bunting* could not be reconciled with *Hogg,* and that *Hogg* should be overruled.

About a year later, in *State v. Jett,* 316 Md. 248, 558 A.2d 385 (1989), this Court, relying on *Bunting,* held that the State was not entitled to appeal from an interlocutory order denying the State's motion, based on sovereign immunity, to dismiss a tort claim asserted under the Maryland Tort Claims Act, then codified as Maryland Code (1984, 1988 Cum.Supp.), §§ 12–101 through 12–110 of the State Government Article. In *Jett,* the plaintiff claimed that the State was liable, under the doctrine

of *respondeat superior,* for the tortious acts of certain deputy sheriffs. The State moved to dismiss the complaint on the ground that the Tort Claims Act did not cover tortious acts by deputy sheriffs, that the State's common law sovereign immunity was therefore not waived by the Tort Claims Act, and that the State was entitled to the common law defense of sovereign immunity. The State's motion was denied, and the State took an interlocutory appeal, relying on the *Hogg* opinion.

In holding that the *Hogg* decision was inapplicable, the Court in *Jett* quoted the passage from *Bunting* that *Hogg* must be read " 'in the context of what was before the Court,' " *Jett,* 316 Md. at 255, 558 A.2d at 388, quoting *Bunting,* 312 Md. at 482 n. 9, 540 A.2d at 809 n. 9. A majority of the Court in *Jett* also purported to draw a distinction between (1) a defense of sovereign immunity grounded upon the inapplicability of a waiver of immunity statute, thereby leaving common law sovereign immunity intact, and (2) a defense of "common law sovereign immunity in its full, unrestricted vigor." 316 Md. at 255, 558 A.2d at 388.

A more recent opinion of this Court applying the holding of the *Bunting* case to an appeal of an interlocutory order rejecting an immunity claim is *Shoemaker v. Smith,* 353 Md. 143, 725 A.2d 549 (1999). In that case, this Court upheld the dismissal of an appeal by two deputy sheriffs from a trial court's interlocutory order denying the deputies' summary judgment motion based on immunity from suit. We initially held in *Shoemaker,* 353 Md. at 164–168, 725 A.2d at 561–562, that the third requirement of the collateral order doctrine had not been met.[4]

Alternatively, we held in *Shoemaker,* 353 Md. at 168–170, 725 A.2d at 562–563, that the fourth requirement of the collateral order doctrine, *i.e.* that the interlocutory order would not be effectively reviewable on appeal from a final

---

4. *See,* in this connection, *Artis v. Cyphers,* 100 Md.App. 633, 642 A.2d 298, *affirmed,* 336 Md. 561, 649 A.2d 838 (1994).

judgment terminating the case, was not met.   Judge Wilner
for the Court explained in *Shoemaker,* 353 Md. at 170, 725
A.2d at 563:

> *"Bunting* makes clear that the claimed right of immunity
> from trial itself does not suffice to satisfy the 'unreviewabili-
> ty' requirement of the collateral order doctrine except in
> 'extraordinary situations.'   We do not regard the denial of a
> motion for summary judgment asserting the qualified immu-
> nity of a deputy sheriff charged with maliciously committing
> common law torts as an 'extraordinary situation.'

* * *

> "To recapitulate, in order to proceed under the collateral
> order doctrine, all four prongs of that doctrine must be
> satisfied.   *Artis* makes clear that the third prong—the
> conclusiveness of the adjudication—is not ordinarily satis-
> fied unless the immunity issue can be resolved as a pure
> issue of law, without the court having to assume any materi-
> al facts or inferences that are in dispute.   Even if the *Artis*
> standard is met, however, *Bunting* makes clear that the
> fourth prong—unreviewability after final judgment—is not
> satisfied except in 'extraordinary situations.'   Through those
> cases, in contrast to the Federal approach, we have placed
> significant limits on immediate appeals from interlocutory
> orders denying a governmental immunity defense."

*See also In re Franklin P.,* 366 Md. 306, 327, 783 A.2d 673,
685 (2001) (The collateral order principle "is a doctrine that is
to be applied 'only sparingly' "); *Pittsburgh Corning v. James,*
353 Md. 657, 666, 728 A.2d 210, 214 (1999) ("As we pointed out
in *Bunting* and confirmed in *Shoemaker,* the proffered right
to avoid trial, either at all or in a particular forum, cannot be
allowed to be the tail that wags the final judgment rule dog").

On several occasions in recent years, this Court has sum-
marily reversed Court of Special Appeals' judgments where
the intermediate appellate court had entertained appeals from
interlocutory orders rejecting immunity defenses, and we or-
dered that the appeals be dismissed.   *See, e.g., Housing*

*Authority v. Smalls,* 369 Md. 224, 798 A.2d 579 (2002); *Ortho-dox Jewish Council v. Abramson,* 368 Md. 1, 791 A.2d 129 (2002); *Peck v. DiMario,* 362 Md. 660, 766 A.2d 616 (2001); *Bowers v. Callahan,* 359 Md. 395, 754 A.2d 388 (2000); *Dennis v. Folkenberg,* 354 Md. 412, 731 A.2d 883 (1999); *Samuels v. Tschechtelin,* 353 Md. 508, 727 A.2d 929 (1999).

Most recently, in *In re Foley, supra,* 373 Md. 627, 820 A.2d 587, we reversed a Court of Special Appeals' judgment in a case where that court had entertained an appeal under the collateral order doctrine on the theory that the interlocutory order might not have been reviewable after a final judgment. The *Foley* opinion reiterated "that the fourth requirement of the collateral order doctrine, *i.e.,* that an issue is not effectively reviewable after a final judgment terminating the case, should be deemed satisfied only in 'a very few ... extraordinary situations.'" *In re Foley, supra,* 373 Md. at 636, 820 A.2d at 593, quoting *Bunting v. State, supra,* 312 Md. at 482, 540 A.2d at 809.

■ The collateral order doctrine is based upon a judicially created fiction, under which certain interlocutory orders are considered to be final judgments, even though such orders clearly are *not* final judgments. The justification for the fiction is a perceived necessity, in "a very few ... extraordinary situations," [5] for immediate appellate review. The previously cited cases in this Court, after *State v. Hogg,* involving interlocutory orders rejecting immunity defenses, did not involve such "extraordinary situations," and we ordered that the appeals should be dismissed. *State v. Hogg* also did not involve an extraordinary situation, and we now explicitly overrule the collateral order doctrine holding of that case. We also reject the distinction drawn in *State v. Jett, supra,* between (1) a sovereign immunity defense based directly upon the common law principle and (2) a sovereign immunity defense based on the argument that a statute failed to waive sovereign immunity and that, therefore, the common law

5. *Bunting,* 312 Md. at 482, 540 A.2d at 809.

principle is applicable. Analytically, this is a distinction without a difference.

As a general rule, interlocutory trial court orders rejecting defenses of common law sovereign immunity, governmental immunity, public official immunity, statutory immunity, or any other type of immunity, are not appealable under the Maryland collateral order doctrine. Whether, and under what circumstances, interlocutory orders overruling immunity defenses asserted by the Governor, Lieutenant Governor, Comptroller, Treasurer, Attorney General, Speaker of the House, President of the Senate, or judges as defined in Article IV, § 2, of the Maryland Constitution, are immediately appealable under the collateral order doctrine will have to be determined in any future cases that might arise. *Cf. Mandel v. O'Hara,* 320 Md. 103, 134, 576 A.2d 766, 781 (1990). Interlocutory trial court orders overruling immunity claims by other government officials, employees, departments, agencies, entities, units, or subdivisions, or by private persons or entities, are not appealable under the doctrine.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO DISMISS THE APPEAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENTS.*