REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1110

September Term, 2014

_____

STATE OF MARYLAND

v.

CYNTHIA KELLER-BEE

_____

Zarnoch,
Hotten,
Reed,

JJ.

_____

Opinion by Hotten, J.

_____

Filed: July 6, 2015

Appellee, Cynthia Keller-Bee, was taken into custody pursuant to a body attachment that was improperly issued by the District Court for Harford County. She brought suit in the Circuit Court for Baltimore City against the State, alleging negligence on the part of the courtroom clerk who presented the warrant to the District Court judge for signature. The State moved to dismiss the lawsuit, asserting absolute judicial immunity. The circuit court denied the motion and the State appealed, presenting one question for our review:

> Does absolute judicial immunity bar a civil suit against the State of Maryland arising from the performance of judicial acts, where the only injury alleged is the direct and proximate result of the entry of an order by a judge of the District Court of Maryland?

For the reasons that follow, we shall reverse the judgment of the circuit court.

## FACTUAL AND PROCEDURAL HISTORY

The facts of this case are undisputed. On April 16, 2010, appellee, appeared in the District Court for Harford County pursuant to a show cause order in a civil action in which a judgment had been obtained against her. She appeared for the hearing, but the creditor-plaintiff did not and accordingly, the District Court dismissed the show cause order. Nine months later, on January 20, 2011, the District Court issued a Body Attachment/Arrest Warrant, based on a motion for contempt by the creditor-plaintiff, for appellee allegedly failing to appear at the April 16, 2010 court date. Appellee was taken into custody on January 27, 2011. Following an appearance before a Court Commissioner, she was released on her own recognizance and instructed that she would receive notice regarding a court date to address her failure to appear. On February 4, 2011, appellee went to the

District Court clerk's office to ascertain why she was arrested. Following an investigation by that office, it was determined that the warrant had been improperly issued.

Appellee filed a two count lawsuit against the State of Maryland on December 27, 2013. The first count alleged negligence on the part of the unidentified employee of the clerk's office who presented the arrest warrant to the District Court judge. The second count claimed violations of appellee's constitutional rights under Article 24 of the Maryland Declaration of Rights. In response, the State filed a motion to dismiss, asserting absolute judicial immunity. The circuit court denied the motion to dismiss following a hearing, expressing concern with the prolonged lapse in time between the April 16, 2010 hearing and the January 20, 2011 issuance of the warrant.

The State noted an appeal pursuant to the collateral order doctrine. Appellee moved to dismiss the State's appeal, which this Court denied.[1] Additional facts shall be provided, *infra*, to the extent they prove relevant in addressing the issue presented.

## STANDARD OF REVIEW

In reviewing the denial of a motion to dismiss, "we must assume the truth of all relevant and material facts that are well pleaded and all inferences which can be reasonably drawn from those pleadings." *Ronald M. Sharrow, Chartered v. State Farm Mut. Auto. Ins.,* 306 Md. 754, 768 (1986). The facts we may consider are limited "to the four corners of the complaint and its incorporated supporting exhibits, if any." *Converge Servs. Grp. v.*

---

[1] Prior to oral argument before this Court, the State filed a Motion to Correct the record, seeking to add an affidavit, including exhibits, of Robert Wagman, counsel of the plaintiff-judgment creditor in the underlying civil matter. We granted the motion and have corrected the record to include the documents.

*Curran*, 383 Md. 462, 475 (2004). *See also Amalgamated Transit Union, Local 1300 v. Lovelace*, 441 Md. 560, 564 (2015). Additionally, the party asserting judicial immunity bears the burden of establishing the claim. *Simms v. Constantine*, 113 Md. App. 291, 318-319 (1997).

## DISCUSSION

### a. Is the State's appeal proper?

Upon the State's notice of appeal, appellee filed a motion to dismiss with this Court, arguing that the circuit court's denial of the State's motion to dismiss was not an appealable order. The State responded that its appeal was permissible pursuant to the collateral order doctrine.

"The collateral order doctrine is based upon a judicially created fiction, under which certain interlocutory orders are considered to be final judgments, even though such orders clearly are *not* final judgments. The justification for the fiction is a perceived necessity, in 'a very few . . . extraordinary situations,' for immediate appellate review." *Dawkins v. Baltimore City Police Dep't*, 376 Md. 53, 64 (2003) (footnote omitted) (emphasis in original). As the Court of Appeals has explained, "[t]he concept [of the collateral doctrine rule] is narrow in scope. . . ." *Cant v. Bartlett*, 292 Md. 611, 615 (1982).

In the present case, both parties rely on *Dawkins*, *supra*, in support of their respective arguments regarding the appealability of the circuit court's denial of the State's motion to dismiss. In *Dawkins*, the plaintiff brought a tort suit against the Mayor, Police Commissioner and multiple police officers of the City of Baltimore, alleging negligence, assault, and violations of her state constitutional rights. 376 Md. at 54-55. The defendants

moved to dismiss, asserting sovereign, governmental, and public official immunity. *Id*. at 57. The circuit court denied the motions and the defendants appealed. *Id*. This Court held that the orders denying the motions to dismiss were appealable under the collateral order doctrine. The plaintiff filed for *certiorari*, which the Court of Appeals granted in order to consider whether a defendant could appeal the denial of its motion to dismiss asserting sovereign immunity. *Id*.

The Court of Appeals emphasized that the collateral order doctrine was reserved for extraordinary situations. While the Court observed that the assertion of sovereign immunity may not be a sufficient basis to warrant appeal under the collateral order doctrine, the Court took the opportunity to comment on other forms of immunity. It opined:

> As a general rule, interlocutory trial court orders rejecting defenses of common law sovereign immunity, governmental immunity, public official immunity, statutory immunity, or any other type of immunity, are not appealable under the Maryland collateral order doctrine. Whether, and under what circumstances, interlocutory orders overruling immunity defenses asserted by the Governor, Lieutenant Governor, Comptroller, Treasurer, Attorney General, Speaker of the House, President of the Senate, or judges as defined in Article IV, § 2, of the Maryland Constitution, are immediately appealable under the collateral order doctrine will have to be determined in any future cases that might arise.

*Id*. at 65.

We are persuaded by the State's argument that the Court of Appeals expressly declined to extend to judges the general rule of nonappealability of interlocutory orders overruling immunity defenses. The Court of Appeals left open the resolution of this issue for future consideration. Under the facts presented in the instant case, we conclude that the circuit court's denial of the State's motion to dismiss was appealable under the

collateral order doctrine. As will be discussed in detail *infra*, Maryland Courts have clearly established that a judge is immune from tort liability for judicial acts. Appellee brought suit against the appellant based on the activity of the clerk who presented the body attachment to the judge. As the circuit court acknowledged, if the complaint had been filed against the judge, the suit would have been dismissed pursuant to absolute judicial immunity. The harm appellee alleges emanated from the judge's issuance of the warrant. It is this judicial function that is really the subject of appellee's tort claim. While the Court did not resolve the issue of judicial immunity in *Dawkins*, it left the decision to entertain an appeal of a denial of a motion to dismiss asserting judicial immunity pursuant to the collateral order doctrine to courts to "determine[] in any future cases that might arise." 376 Md. at 65. We find that the facts of this case permit our consideration of the appeal. We find further support for our conclusion from nearby courts. The U.S. Court of Appeals for the District of Columbia Circuit has extended judicial immunity to courtroom clerks because "if immunity were not extended to clerks, courts would face the 'danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly [would] vent their wrath on clerks, court reporters, and other judicial adjuncts.'" *Sindram v. Suda*, 986 F.2d 1459, 1461 (D.C. Cir. 1993).

Accordingly, the State's appeal of the circuit court's denial of its motion to dismiss and overruling of its assertion of absolute judicial immunity was appealable pursuant to the collateral order doctrine. We now turn to the merits of the State's appeal.

### b. *Was the State entitled to the defense of absolute judicial immunity?*

The State argues that the circuit court's denial of its motion to dismiss should be reversed and appellee's complaint dismissed because Maryland law establishes that absolute judicial immunity precludes a tort lawsuit based on an order by a judge. Appellee maintains that the court did not err because judicial immunity does not extend to the negligent acts of all employees in clerk's office. The circuit court's denial of the State's motion was predicated on its concern that the clerk may not have acted under the direction of the judge because of the nine month lapse in time between the hearing and the erroneous presentment of the arrest warrant. The circuit court appeared to understand that absolute judicial immunity applied when a clerk acts within the scope of her or his employment at the direction of a judge, but questioned whether the clerk was acting within those parameters in this instance.

We begin our discussion of the relevant case law with *Parker v. State*, 337 Md. 271 (1995), because the facts of that case are similar to the circumstances before us. Parker was convicted of speeding and fined $150. *Id*. at 275. Following her failure to pay the fine, an arrest warrant was issued against her. *Id*. Parker eventually appealed her conviction in the circuit court and was acquitted of the speeding offense. *Id*. However, following her acquittal, the Sheriff presented an arrest warrant to a circuit court judge based on her failure to pay the original $150 fine. *Id*. The circuit court issued the warrant without reviewing the case file. *Id*. Parker was thereafter arrested and detained until she paid the fine. She later filed suit alleging negligence, false imprisonment and false arrest, against the circuit court judge and the clerk. *Id*. The State filed a motion to dismiss asserting

judicial immunity as to the counts against the circuit court judge and the circuit court granted the motion. *Id*. Parker appealed to this Court, and we affirmed the court's grant of the motion to dismiss holding that the circuit court judge had jurisdiction to issue the warrant and accordingly was judicially immune. *Id*. at 276. The Court of Appeals granted *certiorari*. *Id*.

The Court of Appeals began by exploring the English origins of our common law principle of judicial immunity. *Id*. at 277-79. Beginning in at least the early 19th century, American courts began to recognize absolute judicial immunity. *Id*. at 280 (citing *Busteed v. Parsons*, 54 Ala. 393, 25 Am. Rep. 688 (1875); *Phelps v. Sill*, 1 Day 315 (Conn.1804); *Briggs v. Wardwell*, 10 Mass. 356 (1813); *Wall v. Trumbull*, 16 Mich. 228 (1867); *Yates v. Lansing*, 5 Johns. 282 (Ct. of Errors 1810); *Hoggatt v. Bigley*, 25 Tenn. 236, 6 Hum. 236 (1845)). Quoting an 1872 Supreme Court case in which a court declined to permit a civil suit against a judge based on a ruling made from the bench, the Court of Appeals discussed one underlying rationale for judicial immunity, which is particularly relevant to the case at bar:

> "[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequence to himself. Liability to answer to everyone who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful." As the Court in *Bradley v. Fisher* indicated, individual citizens are more likely to feel aggrieved and injured by judges than by other public officials, because judges are ultimately responsible for decisions closely affecting individuals' lives. . . . "Controversies involving not merely great pecuniary interests, but the liberty and character of the parties and, consequently, exciting the deepest feelings, are being constantly determined

in [the] courts. . . . Few persons sufficiently irritated to institute an action against a judge for his judicial acts would hesitate to ascribe any character to the acts which would be essential to the maintenance of the action." Furthermore, the Court pointed out that the judicial system provides other avenues of relief for disappointed litigants. While erroneous rulings may be corrected through the appellate process, judges who act "with partiality, or maliciously, or corruptly, or arbitrarily, or oppressively, . . . may be called to an account by impeachment and suspended or removed from office." Accordingly, the Court concluded, no judge "can [ ] be subjected to responsibility for [a judicial act] in a civil action, however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff."

*Id*. at 281-82 (internal citations omitted). The Court of Appeals observed that Maryland has not modified the general rule of absolute judicial immunity and in fact, over the last several decades, has reaffirmed the principle for all judicial acts. *Id*. at 284-85. Considering the above reasoning, the Court of Appeals, held that Parker could not institute a civil action against the judge for issuing the warrant for her arrest even if issued improperly. *Id*. at 287. The Court explained that issuing warrants was a judicial activity, and therefore, by performing a judicial act, the judge was entitled to absolute judicial immunity. *Id*.

In *D'Aoust v. Diamond*, et al., 424 Md. 549 (2012), the Court of Appeals addressed who may be entitled to judicial immunity. Referencing *Parker*, *supra*, the Court reviewed the purposes of judicial immunity, then noted that judicial immunity has been extended to officials other than judges. *Id*. at 597 (citing *Gill v. Ripley*, 352 Md. 754 (1999)). The Court then announced that "the appropriate test for determining whether an individual is entitled to receive the benefit of absolute judicial immunity for certain functions is whether: (1) the act performed was by a judicial officer; and (2) the act was a judicial act." *Id*. at

598. The most important inquiry in determining whether an individual is entitled to judicial immunity is what function that person performed. *Id*. The Court explained that the function matters more than the identity of the person acting because the goal of judicial immunity is to permit judicial officers to perform their duties free from fear of civil liability. *Id.* The Court continued:

> The determination of [w]hether a function qualifies for absolute immunity is made objectively and not subjectively. The considerations relevant to determining whether an act by a judge is judicial relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity. For example, the issuance of a warrant has been considered a judicial act deserving of judicial immunity, *see Parker*, [*supra*, at 287], while the demotion and discharge of court personnel has been treated as an administrative act not deserving of judicial immunity. Applying a functional analysis to judicial officers other than judges, *this Court has held that individuals such as law clerks and court clerks are entitled to judicial immunity "when performing tasks that are integral to the judicial process*[.]"

*Id*. at 599-600 (internal citations and quotations omitted) (emphasis added). Additionally, although the parties did not brief the issue, the Court established that if a party was not a judicial officer, they were not entitled to the benefits of absolute immunity. *Id*. at 600.

The principle that absolute judicial immunity attaches to the function and not the person was explored in *Gill v. Ripley*, 352 Md. 754, 761 (1999). *Gill* dealt with absolute judicial immunity's cousin – prosecutorial immunity[2] – and the Court of Appeals'

---

[2] Unlike judicial immunity, the principle of prosecutorial immunity is an American invention. "Because the office of public prosecutor was largely unknown in England, we did not inherit any separate doctrine of prosecutorial immunity from English common law. That doctrine developed largely in the American courts." *Gill v. Ripley*, 352 Md. 754, 764 (1999) (citing *Burns v. Reed,* 500 U.S. 478, 493 (1991)).

extension of prosecutorial immunity to a clerical employee of a State's Attorney office. The underlying case was a paternity dispute between the plaintiff and her former partner. *Id*. at 757. Ms. Greene, a non-attorney clerical staff member at the State's Attorney's office communicated with the plaintiff, giving her advice, and performing various acts in regards to her paternity suit. *Id*. at 759. The plaintiff alleged that some of these communications and actions were negligent and following the dismissal of her paternity action, brought suit against several prosecutors and staff members. *Id*. at 758. The defendants, including Ms. Greene, filed motions to dismiss, asserting prosecutorial immunity. The circuit court granted the motions and the plaintiff appealed.

The Court of Appeals, granted *certiorari* to address the extent prosecutorial immunity applies to actions that occur outside of a judicial proceeding. *Id*. at 760. The Court turned to the context of judicial immunity and its extension to parties other than judges such as law clerks and courtroom clerks. The Court explained that in those instances:

> The general rule is that those individuals, when performing tasks that are integral to the judicial process, enjoy the same immunity that is applicable to the judges. Particularly in the more recent cases, the courts have applied the same kind of functional analysis that has been applied to judges.

*Id*. at 771. The Court of Appeals considered that Ms. Greene was an employee of the State's Attorney's office and that at all relevant times, was acting within the scope of her employment. *Id*. The Court concluded that Ms. Greene's challenged conduct occurred during, and in direct relation to, the prosecution of the paternity action. The Court concluded that since judicial immunity had been extended to courtroom clerks, there was

no principled basis to distinguish Ms. Greene when she was performing her duties in the course of her employment. *Id*. at 773.

Returning to the case at bar, in order to ascertain whether appellee may maintain an action against the courtroom clerk, we shall apply the test articulated in *D'Aoust*: was the act 1) performed by a judicial officer and 2) was it a judicial act?

The first element requires us to determine whether the courtroom clerk was a "judicial officer." *Gill* was decided prior to *D'Aoust*, however, it establishes that law clerks and courtroom clerks enjoy the same immunity as the judge for whom they work for. The opinion focused on whether the clerical staff was performing the challenged action within the scope of her employment. In the instant case, if the courtroom clerk presented the warrant within the scope of her employment to the judge, then s/he would qualify as a judicial officer for judicial immunity purposes. The circuit court judge expressed reservations regarding whether the clerk in the instant case was performing under the direction of the judge, based on the time gap between the hearing and the issuance of the order. Noting the judge's concern, as noted in *Parker*, unlike other state and federal courts, Maryland has not modified the absolute judicial immunity rule. Accordingly, any judicial officer, acting within the scope of his/her employment and performing a judicial act is entitled to the benefit of absolute immunity of civil suit. This principle extends to situations involving corruption and malice, and therefore, covers what appellee alleges and the circuit court insinuates is the case here, simple negligence. The presentment of warrants to judges for approval and signature is a task that regularly occurs during the performance of a clerk's

employment.  Since the clerk's action was within the scope of his or her employment, s/he was entitled to the benefits of absolute judicial immunity.

The second part of the *D'Aoust* test is easily resolved.  Appellee challenges the clerk's presentment of the arrest warrant for the judge's consideration.  The Court of Appeals established that the issuance of arrest warrants is a judicial act.  *See D'Aoust*, 424 Md. at 599 (citing *Parker*, 337 Md. at 287).  Accordingly, we find that the second element was met because the contested action is the issuance of an arrest warrant.

Under the D*'Aoust* test, the courtroom clerk was a judicial officer and performing a judicial act.  Therefore s/he was afforded judicial immunity.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY IS REVERSED.  COSTS TO BE PAID BY APPELLEE.**