*Cynthia Keller-Bee v. State*, No. 73, September Term, 2015

**JUDICIAL IMMUNITY — PROXIMATE CAUSE** — In general, judicial acts are protected by absolute judicial immunity. When a body attachment is improperly issued against an individual, the judge's act of signing the body attachment is the act that caused the individual's injury because the body attachment has no legal effect without the judge's signature. Because a judge's signing a body attachment is unquestionably a judicial act, the act that caused the individual's injury is protected by absolute judicial immunity. Any negligence on the part of court personnel in preparing the body attachment and presenting it to the judge for signature is therefore not actionable because that conduct was not the proximate cause of the individual's injury.

Circuit Court for Baltimore City
Case No. 24-C-13-008502
Argued: April 1, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 73

September Term, 2015

_____

CYNTHIA KELLER-BEE

v.

STATE OF MARYLAND

_____

Barbera, C.J.
*Battaglia
Greene
Adkins
McDonald
Watts
Rodowsky, Lawrence F. (Retired, Specially Assigned),

JJ.

_____

Opinion by Barbera, C.J.

_____

Filed: June 22, 2016

*Battaglia, J., now retired, participated in the hearing and conference of the case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

This case poses the question of whether absolute judicial immunity bars suit against the State of Maryland for the alleged negligent act of an unspecified clerk of the court when the only injury alleged in the complaint is the direct and proximate result of the judge's issuance of a body attachment. For the reasons that follow, we answer that question in the affirmative.

I.

On April 16, 2010, Petitioner, Cynthia Keller-Bee, appeared in the District Court of Maryland sitting in Harford County pursuant to an order requiring her to show cause why she had not answered post-judgment interrogatories in an action in which judgment had been entered against her. For an unknown reason, the judgment creditor did not appear at that hearing, causing the court to dismiss the show cause order.

Ironically, nine months later, the judgment creditor filed a motion requesting that Petitioner be found in contempt for her alleged failure to appear at the hearing on April 16, 2010, and seeking a body attachment against her.[1] The Administrative Judge for the District Court signed the body attachment. On the morning of January 27, 2011, it was executed upon Petitioner and she was taken into custody. That same afternoon, Petitioner was brought before a Court Commissioner who released her on her own recognizance with

---

[1] A body attachment is defined as

> a written order issued by a court directing a sheriff or peace officer to take custody of and bring before the court (1) a witness who fails to comply with a subpoena, (2) a material witness in a criminal action, or (3) a party in a civil action who fails to comply with an order of court.

Md. Rule 1-202(c).

the advisement that she would receive notice of a court date to address her alleged failure to appear.

On February 4, 2011, Petitioner went to the District Court Clerk's Office to ask why she had been arrested and detained. Following that office's investigation, Petitioner was advised that she should not have been arrested because she had appeared at the hearing as ordered and, for that reason, she would not need to appear again in court.

On December 27, 2013, Petitioner filed in the Circuit Court for Baltimore City a two-count complaint against the State of Maryland. The complaint alleged "negligence and malfeasance of one or more of the State's employees in the District Court System for Harford County in presenting body attachment papers to [the Administrative Judge] for signage and issuance." Count I alleged that "drafting and or presenting body attachment papers to [the judge] for issuance of the same" constituted negligence on the part of some unnamed "employee/agent or employees/agents" of the District Court of Maryland. Count II alleged that those same acts violated Petitioner's rights under Article 24 of the Maryland Declaration of Rights. Petitioner further alleged that "she was harmed and lost her liberty" and "experienced severe mental anguish, pain and suffering, loss of freedom, liberty, and/or other recoverable losses and damages associated with the violation of her rights."

The State moved to dismiss the complaint on the ground of absolute judicial immunity. Following a hearing, the Circuit Court denied the motion. While noting that a clerk would be entitled to the defense of absolute judicial immunity if acting at the direction or under the supervision of a judge, the Circuit Court questioned whether the clerk was acting with such authority based upon the time that had elapsed between Petitioner's

2

appearance in court and the clerk's generating the body attachment.

The State appealed the denial of the motion to dismiss. The Court of Special Appeals, in a reported opinion, reversed the judgment of the Circuit Court.[2] *State v. Keller-Bee*, 224 Md. App. 1, 3 (2015). Observing that "absolute judicial immunity attaches to the function and not the person," *id.* at 11, the intermediate appellate court agreed with the State that the action complained of was the judge's judicial act of signing the body attachment, rather than any action by court personnel in presenting the body attachment to the judge for signature or thereafter transmitting the signed body attachment to the sheriff for execution. *Id.* at 6 ("The harm [Petitioner] alleges emanated from the judge's issuance of the warrant. It is this judicial function that is really the subject of [her] tort claim."). The Court of Special Appeals added that "presentment of warrants to judges for approval and signature is a task that regularly occurs during the performance of a clerk's employment," and therefore "the issuance of arrest warrants is a judicial act." *Id.* at 13.

> Petitioner filed a petition for writ of certiorari, which asked us to decide:
>
> Whether the Court of Special Appeals properly found that District Court clericals who are neither supervised by a Judge or State's Attorney nor directed to take certain actions by a Judge or State's Attorney are entitled to absolute judicial immunity for negligent torts which result in injury to a citizen?[3]

---

[2] The State relied on the collateral order doctrine in noting an immediate appeal. Petitioner filed a motion to dismiss the appeal on the ground that the Circuit Court's order did not come within the collateral order doctrine. The Court of Special Appeals denied the motion. Petitioner has not challenged that decision of the Court of Special Appeals.

[3] Petitioner also raised a second question, asking the Court "[w]hether the Court of Special Appeals failed to adequately and properly follow this Court's decision in *Parker v. State*, 337 Md. 271 (1995), which held that a judge was entitled to absolute judicial immunity but expressly left open the question of whether district court clerks were also entitled to such

3

We granted the petition, *Keller-Bee v. State*, 445 Md. 487 (2015), and affirm the judgment of the Court of Special Appeals, but do so without regard to whether the clerk was supervised or directed to take certain actions by a judge. Instead, we hold that Petitioner's claims against the State of Maryland are barred by absolute judicial immunity because the clerk's role in transmitting the application for a body attachment to the judge for signature was not the proximate cause of Petitioner's wrongful arrest. Rather, the judge's act of signing the body attachment caused Petitioner's injury, and that act is protected by absolute judicial immunity.

## II.

"The principle that judicial officers should be immune from all civil liability for their judicial acts has been part of the common law since very early days." *Parker v. State*, 337 Md. 271, 277 (1995). The doctrine of absolute judicial immunity bars civil suits against judges "for acts done by them in the exercise of their judicial functions." *Id.* at 280 (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1872)). The reasoning behind the doctrine is sound: for judges to exercise fully the independent judgment and discretion vested to them in furtherance of the administration of justice, they must rest assured that they will not be exposed to liability to "everyone who might feel himself aggrieved" by the judges' decisions. *Id.* at 281 (quoting *Bradley*, 80 U.S. at 347). Thus, "a judge who has a general judicial authority to perform the kinds of acts for which he is sued is absolutely immune

immunity?" The answer to this question will be subsumed within our resolution of the first question.

4

from civil liability for those acts." *Id.* at 282. The only exception to the broad grant of absolute immunity is if an act is performed when "there is clearly no jurisdiction over the subject-matter" and "the want of jurisdiction is known to the judge." *Bradley*, 80 U.S. at 351-52.

The State advances two alternative theories for why Petitioner's suit is barred by the doctrine of absolute judicial immunity. The State first points out that issuance of a body attachment is a "judicial act" protected by judicial immunity and, as such, "'cannot form the basis of a recovery against the State under the Tort Claims Act.'" (Quoting *Parker*, 337 Md. at 286). The State argues that, "because the gravamen of Ms. Keller-Bee's complaint consists of harm she claims to have suffered from [the judge's] issuance of the body attachment – a judicial act protected by judicial immunity – this suit against the State is barred by the rule recognized in *Parker*." It therefore follows, the State further argues, that, "to uphold the dismissal of the complaint brought against the State based on absolute judicial immunity, this Court need not look beyond the but-for cause of Ms. Keller-Bee's injury, which was [the judge's] judicial act of issuing the body attachment."

The State argues, in the alternative, that "judicial immunity extends beyond judges to protect other individuals whose public duties are 'necessary to the proper administration of justice,'" (quoting *D'Aoust v. Diamond*, 424 Md. 549, 598 (2012)), and that "'those individuals, when performing tasks that are integral to the judicial process, enjoy the same immunity that is applicable to the judges,'" (quoting *Gill v. Ripley*, 352 Md. 754, 771 (1999)). For both arguments, the State relies on the settled proposition that it is "the nature of the function performed, not the identity of the actor who performed it," that drives the

5

immunity analysis. *See Forrester v. White*, 484 U.S. 219, 229 (1988).

Petitioner accepts the general proposition that judicial immunity applies not only to acts performed by judges in carrying out their judicial duties but also to those judiciary personnel "who act under the direction of a judge or who implement judicial orders of one kind or another." (Quoting *Gill*, 352 Md. at 771). She argues, however, that our case law does not provide "a blanket extension of judicial immunity to all [clerks] in the District Court Clerks' offices." Consequently, "the clerk who initiated the process that led to [Petitioner's] wrongful arrest and incarceration does not have such protection."

We need not resolve the parties' dispute over whether judicial immunity covers the acts of the unnamed District Court clerk or clerks who prepared the body attachment for the Administrative Judge's signature, as it is clear to us that the judicial act that was the direct and proximate cause of Petitioner's alleged injury was the judge's issuance of the body attachment directing that Petitioner be taken into custody.

## III.

In *Parker*, we were presented with the question of whether a judge was entitled to absolute judicial immunity for improperly issuing an arrest warrant. 337 Md. at 274. Much like in this case, the sheriffs requested an arrest warrant for Doris Parker's "continued" failure to pay a fine for a speeding offense when, in actuality, Ms. Parker had been acquitted of that offense. *Id.* A judge "issued the warrant without calling for the case file from the clerk's office or reviewing the docket entries," which would have alerted the judge to Ms. Parker's acquittal. *Id.* Ms. Parker filed an action against the judge and the clerks in the circuit court from which the warrant was issued for false imprisonment, false arrest, and

6

negligence. *Id.* at 275. The circuit court granted the clerks' motion to dismiss "because the clerks played no part in the issuance of the warrant." *Id.* The circuit court further granted the judge's motion to dismiss because he was entitled to absolute judicial immunity, which also precluded an action against the State. *Id.* Before the Court of Special Appeals and before us, Ms. Parker appealed only the dismissal of her claims against the judge and the State. *Id.* at 276. We noted in a footnote that Ms. Parker "has not challenged on appeal the dismissal of the claims based on the alleged tortious acts of the clerks," and we accordingly confined the issue before us to the claim against the judge and the State. *Id.* at 276 n.3.

We affirmed the judgments of the Court of Special Appeals and the circuit court, concluding that judges are absolutely immune from civil suit for all acts within the scope of their jurisdiction. *Id.* at 284, 287. We held that the judge in Ms. Parker's case was entitled to absolute judicial immunity because "[t]he issuance of arrest warrants is the type of judicial activity performed by a circuit judge, and is therefore, in the most general sense, a matter within the jurisdiction of the circuit judge. In issuing the warrant, [the judge] was performing a judicial act." *Id.* at 287.

Petitioner does not seem to contest that the issuance of the body attachment in this case was a judicial act.[4] Rather, as noted, she argues principally that applying judicial

---

[4] It is well settled that an order directing court officers to bring an individual before the court is a judicial act. *Mireles v. Waco*, 502 U.S. 9, 12 (1991). We see no difference in this context between the body attachment issued here and an arrest warrant, the issuance of which our cases have established constitutes a judicial act. *E.g.*, *D'Aoust v. Diamond*, 424 Md. 549, 599 (2012); *Davis v. DiPino*, 337 Md. 642, 652-53 (1995).

7

immunity in this case is not appropriate because our cases have not expressly extended the doctrine to acts taken by clerical employees not directly supervised by a judge. Petitioner relies heavily upon the footnote in *Parker*, in which we noted that the question of a courtroom clerk's judicial immunity was not before us because that issue had not been appealed. According to Petitioner, that we chose not to address whether a clerk would have been entitled to immunity "speaks volumes" and "would strongly suggest the clerks at issue herein were not automatically entitled to absolute immunity."

Petitioner asserts that the unidentified clerk should be held responsible because he or she "negligently failed to note [Petitioner's] appearance and then negligently forwarded the file to the judge's chambers for issuance." Petitioner also hypothesizes that, "even after [the judge] signed the order, the clerk's office had one additional chance to catch the error but failed to do so," and the judge "would have appreciated the error being caught before the order went to the sheriff." Although implicitly acknowledging that the order would have no legal significance without the judge's signature, Petitioner argues that the clerk nevertheless had an independent responsibility to determine the merits of the request for a body attachment because "a judge can and must rely on the employees who work with or for her or him not to allow the judge to make an obvious error in carrying out his or her duties."

Petitioner's concession that it is the *judge* who made the error is fatal to her claim. We need not decide in this case whether clerical employees are entitled to absolute judicial immunity to the same extent as judges, or even whether the clerk at issue here was acting at the direction or under the supervision of a judge, because the clerk did not cause

8

Petitioner's injury. Petitioner's complaint alleges that the erroneously-issued body attachment was "the result of the negligence and malfeasance of one or more of the State's employees in the District Court System for Harford County in presenting body attachment papers to [the judge] for signage and issuance." Implicit in that allegation, however, is the acknowledgement that the judge's act of signing and issuing the body attachment was the act that caused Petitioner's injury, not whatever action by a clerk preceded the judge's signature. We agree with the State that "the true source of Ms. Keller-Bee's grievance and injury is the issuance of the body attachment by [the judge], unquestionably 'a judicial act' subject to absolute judicial immunity."

In short, this case begins and ends with our conclusion in *Parker* that the issuance of an arrest warrant is a judicial act that is shielded from civil liability by absolute judicial immunity. *See* 337 Md. at 287. Although Petitioner, evidently recognizing that a suit against the judge would be unsuccessful, has attempted to shift the blame to the unidentified clerk who generated the body attachment and presented it to the judge, there is no dispute that the body attachment would not have led to Petitioner's arrest absent the judge's signature. The judge's issuance of the body attachment was therefore the operative act that caused Petitioner's wrongful arrest. Because we are concerned with "the nature of the function performed, not the identity of the actor who performed it," *Forrester*, 484 U.S. at 229, it matters not that Petitioner has chosen to bring an action against the clerk instead of the judge. The act that caused Petitioner to be wrongfully arrested is a judicial act that is entitled to absolute judicial immunity. *See Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988) ("Most courts that have addressed this issue have held that a clerk who

9

issues a warrant at the direction of a judge is performing a function to which absolute immunity attaches.").

It is elementary tort law that a motion to dismiss a negligence claim should be granted if the plaintiff cannot establish that the injury alleged was proximately caused by the negligent act. *See Pittway Corp. v. Collins*, 409 Md. 218, 243 (2009) ("It is a basic principle that '[n]egligence is not actionable unless it is a proximate cause of the harm alleged.'" (alteration in original) (quoting *Stone v. Chicago Title Ins. Co.*, 330 Md. 329, 337 (1993))). Because the clerk's act of forwarding the request for a body attachment to the judge was not the proximate cause of Petitioner's injury, Petitioner's complaint fails to state a claim upon which relief can be granted. For that reason, the State's motion to dismiss should have been granted. *See Ford v. Kenosha County*, 466 N.W.2d 646, 652 (Wis. 1991) (affirming an order dismissing an action against a clerk who "negligently prepared the bench warrant and negligently submitted it to the assistant district attorney" because "[s]uch action could only become effective when accepted and signed by the judge, thus making it a judicial act"); *cf. White v. Gerbitz*, 892 F.2d 457, 463 (6th Cir. 1989) (concluding that the district court properly dismissed negligence claims against a clerk who failed to apply the proper procedure for appointing a special city judge because the conduct "was not the proximate cause of [the plaintiff's] incarceration"). We therefore affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.**

10