*Maryland Board of Physicians, et al. v. Mark Geier, Personal Representative of Anne Geier, et al.*, No. 11, September Term, 2016. Opinion by Hotten, J.

**APPEAL AND ERROR — NATURE AND SCOPE OF DECISION**
Court of Appeals held that none of the orders appealed by Petitioner constituted final judgments as defined by the Courts and Judicial Proceedings Article § 12-101(f).

**APPEAL AND ERROR — AFFECTING COLLATERAL MATTERS AND PROCEEDINGS — COLLATERAL ORDER DOCTRINE**
Court of Appeals held that the order granting Respondents sixth motion for sanctions satisfied the collateral order doctrine; the order denying Petitioners motion for reconsideration of default order was not properly appealable under the collateral order doctrine because the order was not "collateral" to the underlying merits of the action; the order denying Petitioner's motion for a protective order was not properly appealable under the express language in *Dawkins v. Baltimore City Police Dept.*, 376 Md. 53, 827 A.2d 115 (2003), which denies appellate consideration of interlocutory orders brought by agencies asserting absolute quasi-judicial immunity.

**APPEAL AND ERROR — PRELIMINARY OR INTERLOCUTORY ORDERS IN GENERAL**
Court of Appeals held that appealability of one interlocutory order based on the collateral order doctrine does not give the Court the authority to hear "piggybacking" interlocutory orders that are not independently appealable under the Court's prior holdings and the collateral order doctrine.

**PRIVILEGED COMMUNICATIONS AND CONFIDENTIALITY — WAIVER OF PRIVILEGE**
Court of Appeals held that Petitioners claim of deliberative process (executive) privilege was not waived in prior proceedings because the record reflects that Petitioners consistently asserted executive privilege in response to Respondents' document requests, and Respondents failed to allege sufficient evidence that Petitioners purposefully withheld the audiotapes in violation of the circuit court's order to compel their disclosure.

**PRIVILEGED COMMUNICATIONS AND CONFIDENTIALITY — EXECUTIVE PRIVILEGE — DELIBERATIVE PROCESS PRIVILEGE**
Court of Appeals held that under the *Hamilton v. Verdow*, 287 Md. 544, 414 A.2d 914 (1980) balancing process, Petitioners asserted a valid claim for deliberative process (executive) privilege for the audiotapes; Respondents failed to assert any specific necessity for the audiotapes, and the nondisclosure of the audiotapes on the basis of the deliberative process (executive) privilege will not impact the fair administration of justice.

IN THE COURT OF APPEALS

OF MARYLAND

No. 11

September Term, 2016

_____

MARYLAND BOARD OF
PHYSICIANS, et al.

v.

MARK R. GEIER, PERSONAL
REPRESENTATIVE OF THE ESTATE
OF ANNE GEIER, et al.

_____

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Hotten,
Getty,
Battaglia, Lynne A.
(Senior Judge, Specially Assigned)

JJ.

_____

Opinion by Hotten, J.
Adkins, J., dissents.
McDonald, J., concurs and dissents.

_____

Filed: January 23, 2017

We consider whether a party asserting the absolute quasi-judicial privilege and the deliberative process (executive) privilege may properly appeal three orders from the circuit court prior to a final judgment, and whether those privileges prevent the admissibility of certain discovery. Respondents, Dr. Mark Geier ("Dr. Geier"), David Geier ("Mr. Geier") and Anne Geier ("Ms. Geier"),[1] filed a complaint against Petitioners[2]"), in the Circuit Court for Montgomery County, alleging that Petitioners invaded their privacy by publicizing their private medical information in a cease and desist order that was issued during disciplinary proceedings brought by Petitioners against Dr. Geier and Mr. Geier.

During discovery, the circuit court entered three separate orders that: (1) granted Respondents' sixth motion for sanctions against Petitioners regarding the disclosure of audiotapes of Petitioners' deliberations; (2) denied Petitioners' motion for reconsideration of a default order on liability for a series of discovery failures; and (3) denied Petitioners' motion for a protective order from Respondents' sixth motion to compel documents, which required Petitioners to disclose their personal financial information to Respondents. Petitioners appealed all three interlocutory orders, and this Court granted certiorari.

For the reasons that follow, we grant Respondents' motion to dismiss as it relates to the orders denying Petitioners' motions for reconsideration and for a protective order; deny

---

[1] This opinion will refer to all three individuals collectively as "Respondents" or individually where needed.

[2] References to "Petitioners" include the Maryland Board of Physicians (the "Board"), and the individual Board members, staff, and the administrative prosecutor who make up the twenty-five co-defendants in this case. The parties will be referenced individually where appropriate.

Respondents' motion to dismiss as it relates to the order granting Respondents' sixth motion for sanctions; reverse and vacate the order granting Respondents' sixth motion for sanctions; and remand the case to the circuit court for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Board's Administrative Proceedings Against Respondents Mark R. Geier and David Geier

#### a. Mark Geier

On October 3, 2006, the Board notified Dr. Geier that it had received a complaint against him regarding his use of the drug Lupron[3] to treat autistic children. The complaint alleged that Dr. Geier was: (1) practicing outside of the scope of his expertise and the prevailing standard of care for autism; (2) experimenting on children without a rational scientific theory or the supervision of a qualified review board; and (3) failing to provide appropriate informed consent regarding the potential side effects of Lupron and similar drugs.

On April 27, 2011, the Board summarily suspended Dr. Geier's right to practice medicine, asserting that the "public health, safety or welfare imperatively required

---

[3] Lupron is an FDA-approved drug used for the treatment of precocious puberty, a condition where girls under the age of eight have changes in breast development or pubic hair and boys under the age of nine have penile and scrotal changes and pubic hair. Lupron can reduce the symptoms of puberty in children with higher than normal levels of testosterone. The reduction of testosterone can decrease aggressive, hyperactive and hypersexual behaviors. *See Geier v. Md. State Bd. of Physicians*, 223 Md. App. 404, 413 n. 3, 116 A.3d 1026, 1031 n. 3 (2015).

2

emergency action" due to certain medical practices engaged in by Dr. Geier.[4]  On May 16, 2011, the Board formally charged Dr. Geier with violations of the Medical Practice Act, Md. Code (Repl. Vol. 2014), §§14-401 *et seq.* of the Health Occupations Article ("Health Occ.").

On September 15, 2011 the Board issued amended charges against Dr. Geier for prescribing medicine to family members while his license was suspended.  After amending its complaint, the Board charged Dr. Geier with: (1) unprofessional conduct in the practice of medicine; (2) willfully making or filing a false report or record in the practice of medicine; (3) willfully failing to file or record any medical record as required under law; (4) practicing medicine with an unauthorized person or aiding an unauthorized person in the practice of medicine; (5) gross overutilization of health care services; (6) failing to meet standards, as determined by peer review, for the delivery of quality medical care; and (7) failing to keep adequate medical records.

---

[4] In addition to prescribing Lupron, Dr. Geier also prescribed chelation therapy to patients, a treatment that involves the use of certain chemicals to remove heavy metals from the body.  In medicine, chelation has been used for the treatment of metal poisoning, among other conditions.  *See* QUESTIONS AND ANSWERS ON UNAPPROVED CHELATION PRODUCTS, http://www.fda.gov/Drugs/ResourcesForYou/Consumers/BuyingUsingMedicineSafely/MedicationHealthFraud/ucm229313.htm (last accessed November 18, 2016).  Dr. Geier prescribed two types of drugs in his chelation therapy, DMSA (dimercaptosuccinic acid), which is approved by the FDA for removing severe levels of heavy metals from the body, and DMPS (2, 3–dimercapto–1–propane–sulfonic acid), which is not approved by the FDA for any purpose.  *See Geier*, 223 Md. App. at 420, 116 A.3d at 1036.

On September 26, 2011, after six days of hearings,[5] an Administrative Law Judge ("ALJ") issued a proposed decision upholding the summary suspension of Dr. Geier's license. On March 13, 2012, following an additional five days of hearings, the ALJ issued a 126-page proposed decision, recommending that the charges against Dr. Geier be upheld,[6] and that his license be revoked.

Dr. Geier took exception to the ALJ's findings, but on August 22, 2012, the Board issued a final decision revoking his license. Dr. Geier petitioned for judicial review, and the Circuit Court for Montgomery County affirmed the Board's revocation on April 9, 2014. Dr. Geier moved to alter or amend the court's ruling, but the motion was denied. Dr. Geier then noted an appeal to the Court of Special Appeals, and that Court, in a reported opinion, affirmed the Board's decision. *See Geier v. Md. State Bd. Of Physicians*, 223 Md. App. 404, 116 A.3d 1026 (2015).

### b. David Geier

On May 16, 2011, the Board also charged Dr. Geier's son, Mr. Geier, for practicing medicine without a license in violation of Health Occ. §14-601.[7] On March 7, 2012, an ALJ recommended that the charges against Mr. Geier be dismissed. On July 30, 2012, however, the Board rejected the ALJ's recommendation and many of the judge's findings,

---

[5] The ALJ did not consider Petitioners' amended charges during the hearing because the charges were amended subsequently.

[6] Specifically, Health Occ. §14-404(a)(3)(ii), §14-404(a)(11), §14-404(a)(22), and §14-404(a)(40). The ALG dismissed Health Occ. §14-404(a)(12), §14-404(a)(18), and §14-404(a)(19).

[7] The record does not reflect that Mr. Geier has ever been a physician.

concluding that Mr. Geier had practiced medicine without a license because he diagnosed a patient, determined which blood tests the patient required, and ordered those tests. The Board imposed a $10,000 fine.

Mr. Geier petitioned the Circuit Court for Montgomery County for judicial review of the Board's findings, and the circuit court affirmed the Board's decision on April 25, 2014. Mr. Geier then appealed to the Court of Special Appeals, and that Court, in an unreported opinion dated July 31, 2015, also affirmed the Board.

### c.  The Disclosure of the Respondents  Personal Medical Information

On January 25, 2012, during the pendency of both disciplinary proceedings, the Board issued a cease and desist order against Dr. Geier, accusing him of practicing medicine while his license had been summarily suspended. The order, posted to the Board's website and viewable by the public, specifically alleged that Dr. Geier had written prescriptions for all three Respondents. The order also detailed the Respondents' confidential medical information, identified the specific medications that Dr. Geier allegedly prescribed to each person, and described the medical conditions that each medication treated.[8]

Petitioners promptly removed the confidential information from the cease and desist order in response to Respondents' protest. Petitioners also issued an amended cease and desist order that deleted the references to the patients and the medications that Dr. Geier

---

[8] This Court declines to reproduce the confidential medical information that was included in the cease and desist letter. Rather, we simply note that the information was highly personal, and not information that a reasonable person would want disseminated to the public.

5

allegedly prescribed for them.  In the interim between the initial publication and the Petitioners' remedial actions, other persons viewed and commented about the Respondents' confidential medical information, and those comments are still accessible on the internet.

Ultimately, an ALJ rejected the charge that Dr. Geier had written any prescriptions in violation of the summary suspension order issued by Petitioners.

## II. Respondents' Civil Action Against Petitioners

### a. The Complaint

On December 12, 2012, while Dr. Geier and Mr. Geier were pursuing judicial review of the Board's adverse rulings, Respondents filed a three-count complaint in the Circuit Court for Montgomery County against Petitioners.  The complaint alleged that by publicizing the January 25th cease and desist order that contained the Respondents' confidential medical information, Petitioners deprived them of their constitutional right to privacy; violated the Maryland Confidentiality of Medical Records Act, Md. Code (1982, 2009 Repl. Vol.), §§4-301 *et seq.* of the Health General Article; and invaded their privacy by giving unreasonable publicity to private facts.  The complaint also alleged that Petitioners "acted with ill will and with the intent to injure [Respondents] by exposing Dr. Geier's personal medical information and that of his wife and son."  Respondents requested compensatory damages, as well as three million dollars in punitive damages.

Petitioners moved to dismiss the complaint for failure to state a claim upon which relief could be granted, asserting they had absolute quasi-judicial immunity from suit under *Ostrzenski v. Siegel*, 177 F.3d 245 (4th Cir. 1999).  Following a hearing on July 10, 2013,

6

the circuit court dismissed the Confidentiality of Medical Records Act claim, finding that the statute did not create a private cause of action. The circuit court allowed the constitutional and invasion of privacy claims to proceed, finding that the record was inadequate to evaluate the applicability of any immunities at such an early stage of the proceedings.

### b. Discovery

Following the circuit court's ruling that allowed two of Respondents' claims to proceed, Respondents sought extensive discovery, attempting to uncover evidence demonstrating Petitioners acted out of animosity in publishing the cease and desist letter. Respondents sought information regarding the specific circumstances immediately surrounding the Petitioners' disclosure of their confidential medical information, as well as documents and testimony that revealed Petitioners' decisional process in the administrative proceedings against them. Respondents also sought communications between Petitioners and their counsel that related to these proceedings. Following an unsatisfactory response to discovery requests, Respondents filed multiple motions to compel and motions for discovery sanctions against Petitioners between the months of November 2013 and February 2016, which led to numerous hearings in the circuit court, and concurrent interlocutory appeals by Petitioners.

Of import to the issues before this Court are the events that occurred during and after Petitioners' filed their first interlocutory appeal from the circuit court's June 17, 2014

7

discovery order.[9]  On August 15, 2014,[10] Respondents filed their fifth motion for sanctions seeking a default judgment as to liability, alleging primarily that Petitioners failed to produce an adequately prepared organizational representative noted as a prepared designee for a 167-topic deposition.  Respondents subsequently requested a hearing regarding the fifth motion for sanctions.  Also on August 15th, the Court of Special Appeals issued an order staying all discovery in the circuit court pending the outcome of the first interlocutory appeal.

In opposition to Respondents' fifth motion for sanctions, Petitioners alleged that most of the deposition topics covered information in Respondents' possession or were not discoverable because they involved issues pending on appeal.  Petitioners also noted they appealed the circuit court's June 17th discovery order denying Petitioners assertions of various privileges, and that Petitioners "should not be sanctioned for declining to allow these protections and privileges to be eviscerated in other discovery proceedings" and

---

[9] On May 1, 2014, Respondents filed their third motion to compel seeking two classes of documents: (1)  the Board's administrative investigatory file in its disciplinary proceedings against Dr. Geier's partner, John L. Young, M.D., and (2) communications between  the Board's attorneys and Petitioner Shafer, an investigator for the Board. Respondents argued that Petitioners proceeded against Dr. Young as part of their campaign to discredit Dr. Geier's research.  Petitioners opposed the production of the deliberations regarding Dr. Young  based on deliberative privilege, attorney-client privilege, attorney work-product protection, and Health Occ. §14-410(a)(1), which states that generally, "[t]he proceedings, records, or files of , the Board a disciplinary panel, or any of its other investigatory bodies are not discoverable and are not admissible in evidence[.]"  Following a hearing on June 17, 2014, the circuit court granted Respondents motion and compelled disclosure of the requested documents. On June 26, 2014, Petitioners noted an appeal.

[10] Respondents' fifth motion for sanctions was received by the circuit court on August 8, 2014, but due to a clerical omission, was not filed with the court until August 15th.

allowing Respondents to "frustrate the appellate court's ability to provide meaningful relief in its resolution" of the issues before it.

Following a hearing on November 13, 2014, the circuit court granted Respondents' fifth motion for sanctions. On December 16, 2014, the circuit court issued a memorandum opinion that detailed Petitioners' culpable conduct during discovery, and thereafter, entered a default judgment of liability against Petitioners. The circuit court noted that a trial on damages would be scheduled after Petitioners' first interlocutory appeal had been resolved.

On December 24, 2014, Petitioners noted a second interlocutory appeal based on the circuit court's default judgment, which the Court of Special Appeals consolidated with Petitioners' initial appeal filed on June 26. *See Md. Bd. Of Physicians v. Geier*, 225 Md. App. 114, 123 A.3d 601 (2015).

### c. The Court of Special Appeals' Decision

The Court of Special Appeals first held that neither order appealed by Petitioners constituted a final judgment. The Court concluded that the collateral order doctrine applied to the June 17th discovery order, allowing the Court to hear Petitioners' claims regarding that discovery order. *See Geier*, 225 Md. App. at 129-38; 123 A.3d at 610-16. The collateral order doctrine did not apply to the December 16th order of default on liability, corresponding to Respondents' fifth motion for sanctions, because the Court concluded that the issues that order addressed were not "collateral" to the merits of the case. *Id.* at 139-43, 123 A.3d at 616-19.

9

In considering the merits of Petitioners' claims regarding the June 17th order, the Court held that under Health Occ. §14-410[11] Dr. John L. Young's ("Dr. Young")[12] disciplinary files were not discoverable by Respondents. The Court noted that, under Health Occ. §14-410, both the Board and Dr. Young had to expressly consent to the discoverability of Dr. Young's proceedings as parties to the action. Because the Board objected to releasing Dr. Young's proceedings, they were not discoverable by Respondents in the present action. *Id.* at 144-47, 123 A.3d 619-21. The Court also concluded that the circuit court erred in rejecting Petitioners' claim of executive privilege, because it failed to expressly balance Petitioners' need for confidentiality against Respondents' need for disclosure, and the impact of nondisclosure on a fair administration of justice. *Id.* at 147-52; 123 A.3d 621-24.

---

[11] Health Occ. §14-410 provides, in relevant part:

(a) Except by the express stipulation and consent of all parties to a proceeding before the Board, a disciplinary panel, or any of its other investigatory bodies, in a civil or criminal action:

    (1) The proceedings, records, or files of the Board, or a disciplinary panel, or any of its other investigatory bodies are not discoverable and are not admissible evidence; and

    (2) Any order passed by the Board or disciplinary panel is not admissible evidence[.]

(b) This section does not apply to a civil action brought by a party to a proceeding before the Board or a disciplinary panel who claims to be aggrieved by the decision of the Board or the disciplinary panel.

[12] Dr. Young was a partner in Dr. Geier's medical practice.

10

Finally, the Court considered the merits of Petitioners' claims regarding the allegedly privileged communications between the Board and Joshua Shafer, an investigator for the Board. Although the Court noted that generally an appellate court does not have jurisdiction to consider an interlocutory appeal from a discovery ruling that rejects a claim of attorney-client privilege, the Court still considered the merits because it formed a part of a ruling that the Court had jurisdiction to review. *Id.* at 153, 123 A.3d at 624 (citing *Kurstin v. Bromberg Rosenthal LLP*, 420 Md. 466, 480, 24 A.3d 88, 96 (2011)). The Court noted that the Guidelines for Administrative Adjudicatory Proceedings ("Guidelines") have no effect on the confidentiality of communications between Board employees, like Shaffer, and the Board's attorneys. *Id.* at 154, 123 A.3d at 625. The Court concluded that the circuit court erred in rejecting Petitioners' claim of privilege on the ground that the Guidelines rendered Shafer a "stranger" to the attorney-client relationship between the Board and its attorneys. *Id.* at 154, 123 A.3d at 625.

The Court remanded the case back to the Circuit Court for Montgomery County for further proceedings consistent with its opinion.

### d. The Post-Remand Proceeding in the Circuit Court

On remand, Respondents sought a hearing on their sixth motion for sanctions filed on August 8, 2014,[13] involving Petitioners' audio recordings on internal deliberations regarding Dr. Geier's and Mr. Geier's disciplinary proceedings.

---

[13] Respondents also filed a fourth motion for sanctions on the same date.

11

On November 2, 2015, Respondents served their sixth request for production of documents, seeking a variety of financial information from Petitioners, which prompted Petitioners to pursue a protective order, based in substantial part, on their claim of absolute quasi-judicial immunity from suit.

On December 28, 2015, Petitioners also filed a motion for reconsideration of the default liability order and for summary judgment in Petitioners' favor. Petitioners asserted that in the order of default on liability, the circuit court found the Board, but not the individual Petitioners, had engaged in discovery violations. Petitioners also argued that the Court of Special Appeals narrowed the scope of what discovery should be permitted. Respondents disagreed, and on February 10, 2016, filed a seventh motion for sanctions alleging that Petitioners' motion for a protective order raising the immunity defense was in bad faith.

On March 24, 2016, the circuit court held a hearing on the parties' respective motions, and subsequently denied Petitioners' motion for summary judgment, motion for reconsideration on the default judgment of liability, and motion for a protective order from Respondents' sixth request for documents. The circuit court found that the General Assembly had enacted a detailed statutory scheme addressing Petitioners' immunity from suit in 1976 that has not been repealed.[14] The circuit court concluded that because the statutory scheme remains in effect, Petitioners' claim of a common law absolute quasi-

---

[14] The circuit court noted the statutory scheme remained in full effect even after this Court established an absolute quasi-judicial privilege in *Gersh v. Ambrose*, 291 Md. 188, 434 A.2d 547 (1981).

12

judicial immunity claim did not apply. On that basis, the circuit court denied Petitioners' motion for summary judgment.

The circuit court also denied Petitioners' motion for reconsideration because the circuit court found that, even under the Court of Special Appeals' mandate, Petitioners failed to provide specific evidence that their deponent was responsive, sufficient for the circuit court to reverse its order. The circuit court also noted that, even after adhering to the Court of Special Appeals' mandate, Petitioners' conduct remained "abysmal, abominable, [and] sanctionable."

Finally, the circuit court granted Respondents' sixth motion for sanctions. The circuit court found that Petitioners did not assert any privilege in their initial responses to Respondents' requests for the audiotapes, and the tapes were not included on Petitioners' privilege logs, so the assertion of privilege was waived. The circuit court also ordered that all of Respondents' outstanding discovery requests were due by April 22, 2016.

On April 1, 2016, Petitioners noted an interlocutory appeal to the Court of Special Appeals, seeking review of the circuit court's March 24th orders denying their motions for reconsideration and request for a protective order, and granting Respondents' sixth motion for sanctions. This Court, *sua sponte*, granted certiorari, and on April 22, 2016 ordered a stay of the proceedings pending further review.

Additional facts shall be provided, *infra*, to the extent they prove relevant in addressing the issues presented.

**STANDARD OF REVIEW**

With respect to discovery rules, it is long settled that circuit court judges "are vested with a reasonable, sound discretion in applying them, which discretion will not be disturbed in the absence of a showing of its abuse." *Ehrlich v. Grove*, 396 Md. 550, 560, 914 A 2.d 783, 790 (2007) (quoting *E.I. du Pont de Nemours & Co. v. Forma-Pack, Inc.*, 351 Md. 396, 405, 718 A.2d 1129, 1133–34 (1998)). Thus, the resolution of discovery disputes and the imposition of discovery sanctions are within the circuit court's sound discretion, and reviewed by this Court only for abuse of discretion. *See id.*

An abuse of discretion occurs "where no reasonable person would take the view adopted by the [trial] court" or when the court acts "without reference to any guiding principles or rules[,]" or when the ruling under consideration is "clearly against the logic and effect of facts and inferences before the court[]" or when the ruling is "violative of fact and logic." *Gallagher Evelius & Jones, LLP v. Joppa Drive-Thru, Inc.*, 195 Md. App. 583, 597, 7 A.3d 160, 168 (2010) (quoting *Wilson v. John Crane, Inc.*, 385 Md. 185, 198–99, 867 A.2d 1077 (2005)). "Generally, the standard is that absent a showing that a court acted in a harsh, unjust, capricious and arbitrary way, [this Court] will not find an abuse of discretion." *Ehrlich*, 396 Md. at 561, 914 A 2.d at 790 (quoting *Dashiell v. Meeks*, 396 Md. 149, 178, 913 A.2d 10, 26 (2006)).

**DISCUSSION**

I.     **Respondents Motion to Dismiss**

In conjunction with filing their brief in this Court, Respondents' also filed a motion to dismiss this appeal for lack of appellate jurisdiction arguing that none of the three orders

before this Court are immediately appealable. We conclude that the orders denying Petitioners' respective motions for reconsideration and for a protective order are not properly appealable, and therefore, grant Respondents' motion to dismiss as it relates to those orders. Because we conclude, however, the order granting Respondents' sixth motion for sanction is immediately reviewable by this Court under the collateral order doctrine, we deny Respondents' motion to dismiss as it relates to that order.

### a. Final Judgment

None of the appealed circuit court's orders qualify as a final judgment that would grant this Court automatic review of the circuit court's decisions. Section 12-101(f) of the Courts and Judicial Proceedings Article defines a final judgment as a "judgment, decree, sentence, order, determination, decision or other action by a court … from which an appeal, application for leave to appeal, or petition for certiorari may be taken." To constitute a final judgment, a trial court's ruling "must either decide and conclude the rights of the parties involved or deny a party the means to prosecute or defend rights and interests in the subject matter of the proceeding." *Harris v. State*, 420 Md. 300, 312, 22 A.3d 886, 893 (2011) (quoting *Schuele v. Case Handyman*, 412 Md. 555, 565, 989 A.2d 210, 216 (2010)).

Additionally, for a judgment to be final, the ruling must also contain the following three attributes: "(1) it must be intended by the court as an unqualified, final disposition of the matter in controversy[;] (2) unless the court acts pursuant to Maryland Rule 2-602(b) to direct the entry of a final judgment as to less than all the claims or all the parties, it must adjudicate or complete the adjudication of all claims against all parties; [and] (3) it must be set forth and recorded in accordance with [Maryland] Rule 2-601." *Metro Maint. Sys.*

15

*S., Inc. v. Milburn*, 442 Md. 289, 298, 112 A.3d 429, 436 (2015) (citing *Rohrbeck v. Rohrbeck*, 318 Md. 28, 41, 566 A.2d 767, 773 (1989).

The record reflects that the circuit court did not intend for any of its orders to be considered a "final disposition of the matter in controversy[.]" *See Metro Maint. Sys. S., Inc.*, 442 Md. at 298, 112 A.3d at 435. The circuit court, after denying Petitioners' motion for a protective order, ordered that Petitioners had until April 1, 2016 to provide an updated privilege log, and until April 22, 2016 to respond to all of Respondents' outstanding discovery requests. The circuit court's scheduling of additional discovery matters clearly indicates that there was no "unqualified, final disposition of the matter in controversy[.]" *Id.*

In the absence of a final judgment, appellate review is limited to three exceptions: (1) appeals from interlocutory orders specifically allowed by statute; (2) immediate appeals permitted under Maryland Rule 2-602; and (3) appeals from interlocutory rulings allowed under the common law collateral order doctrine. *See Salvagno v. Frew*, 388 Md. 605, 615, 881 A.2d 660, 666 (2005). The first two exceptions are not implicated in this case.

### b. Common Law Collateral Order Doctrine

The common law collateral order doctrine is a well-established but narrow exception to the general rule that appellate review must ordinarily await the entry of a final judgment disposing of all claims against the parties. *See Dawkins v. Balt. City Police Dep't.*, 376 Md. 53, 58, 827 A.2d 115, 118 (2003). The doctrine is "based upon a judicially created fiction, under which, certain interlocutory orders are considered to be final judgments, even though such orders are clearly *not* final judgments." *Id.* at 64, 827 A.2d

16

at 121. For the doctrine to apply, the interlocutory order must satisfy the following four requirements: (1) the order must conclusively determine the disputed question; (2) the order must resolve an important issue; (3) the order must resolve an issue that is completely separate from the merits of the action; and (4) the issue would be effectively unreviewable if the appeal had to await the entry of a final judgment. *Id.* at 58, 827 A.2d at 118. These four requirements are strictly applied, and appeals under the doctrine may be entertained only in extraordinary circumstances. *Id.* at 59, 827 A.2d at 118.

In *Dawkins* this Court made clear that, as "a general rule, interlocutory [] orders rejecting defenses of common law sovereign immunity, governmental immunity, public official immunity, statutory immunity, or any other type of immunity are not appealable under the [] collateral order doctrine." *Id.* at 65, 827 A.2d at 122. Specifically, we held,

> [w]hether, and under what circumstances, interlocutory orders overruling immunity defenses asserted by the Governor, Lieutenant Governor, Comptroller, Treasurer, Attorney General, Speaker of the House, President of the Senate, or judges as defined in Article IV, §2, of the Maryland Constitution, are immediately appealable under the collateral order doctrine will have to be determined in any future cases that might arise. Interlocutory trial court orders overruling immunity claims by other government officials, employees, departments, agencies, entities, units, or subdivisions, or by private persons or entities, are not appealable under this doctrine.

*Id.* (citations omitted). After *Dawkins*, this Court and the Court of Special Appeals clarified that interlocutory orders denying absolute judicial immunity and interlocutory orders denying executive privilege to "high level decision makers" are immediately appealable under the collateral order doctrine. *See, e.g.*, *Ehrlich*, 396 Md. at 572, 914 A.2d at 797 (concluding that an interlocutory appeal was appropriate under the

17

"extraordinary circumstances involving discovery orders directed to a high government official."); *State v. Keller-Bee*, 224 Md. App. 1, 6, 119 A.2d 80, 83 (2015), *aff'd*, 448 Md. 300, 138 A.3d 1253 (2016) (concluding that, under *Dawkins*, the trial court's denial of the State's motion to dismiss was immediately appealable under the collateral order doctrine because Article IV judges, and their clerks, are entitled to immediate appellate review of the denial of their judicial immunity).

## 1. Order Granting Respondents' Sixth Motion for Sanctions

We hold that the circuit court's order granting Respondents' sixth motion for sanctions is properly appealable because it satisfies the narrow exception allowing discovery orders denying "high level decision makers" their executive privilege to be immediately appealable under the collateral order doctrine.

### i. Order Granting Motion for Discovery Sanctions is a "Discovery Order"

An order granting discovery sanctions qualifies as a "discovery order" for the purposes of determining the appealability of an order denying executive privilege under the collateral order doctrine. Maryland Rule 2-433 governs a trial judge's ability to enter orders when there are failures of discovery by one or both of the parties. Specifically, Maryland Rule 2-433(a)(3) authorizes a trial judge to enter "a judgment by default that includes a determination as to liability and all relief sought by the moving party against the failing party if the court is satisfied that it has personal jurisdiction over that party."

Respondents argue that "courts have consistently held that orders granting discovery sanctions against a party are not immediately appealable under the collateral order doctrine." Respondents rely solely on *Newman v. Reilly*, a case that did not address

sanctions within the discovery context. 314 Md. 364, 550 A.2d 959 (1988). Rather, the *Newman* court considered sanctions authorized by Cts. & Jud. Proc. §3-2A-07(a) and Maryland Rule 1-341. *See id.* at 376-82, 550 A.2d at 965-68.[15] In *Newman*, this Court held that "a sanctions order against a party to the underlying litigation is not immediately appealable, in advance of final judgment on the merits of the underlying action, under the collateral order doctrine." *Newman*, 314 Md. at 385, 550 A.2d at 969 (citing *Yamaner v. Orkin*, 310 Md. 321, 326, 529 A.2d 361, 364 (1987)). This Court determined that the third prong for the collateral order doctrine test was not satisfied because "an application for sanctions" is not "a claim so distinct from the underlying lawsuit that the parties would be realigned depending on who is claiming, and who is defending against, sanctions." *Id.* In the context of discovery sanctions, the issues the circuit court determines in deciding whether sanctions are appropriate are sufficiently separate from the merits of the underlying action. We conclude therefore, that *Newman* is not controlling in this case, and that an order for discovery sanctions is considered a "discovery order" for the purposes of denying a "high level decision maker" his or her executive privilege.

---

[15] Cts. & Jud. Proc. §3-2A-07(a) authorizes an arbitration panel, upon a finding that the conduct of any party was in bad faith or without substantial justification, to require "the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it." Maryland Rule 1-341 states that "if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court, [on motion by an adverse party,] may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorneys' fees, incurred by the adverse party in opposing it."

### ii. Order Granting Respondents' Sixth Motion for Sanctions is Immediately Appealable

This Court has consistently held that discovery orders, ordinarily, are not appealable prior to a final judgment terminating the case in the trial court. *Montgomery County. v. Stevens*, 337 Md. 471, 477, 654 A.2d 877, 880 (1995) (citing *Dep't of Soc. Serv. v. Stein*, 328 Md. 1, 7, 18, 612 A.2d 880, 883, 888 (1992); *Pub. Serv. Comm'n v. Patuxent Valley*, 300 Md. 200, 207, 477 A.2d 759, 763 (1984)). A narrow exception exists when a "high level decision maker" appeals a discovery order that denies their assertion of executive privilege. *See Stevens*, 337 Md. at 477, 654 A.2d at 880; *see also Patuxent Valley*, 300 Md. at 210, 477 A.2d at 764 ("[D]iscovery orders, directed at other than high level government decision makers, are ordinarily not appealable ...."). In both *Stevens* and *Patuxent Valley*, we determined that the discovery orders compelling a state actor to appear for a deposition were immediately appealable. In both cases, the four-part collateral order doctrine test was satisfied because: (1) the orders conclusively required the appellant to take a deposition; (2) the orders resolved an important issue because they dealt with the potentially great harm to the public by the "disruption of the governmental process" that can be caused by discovery into the decision making processes of a high level government official; (3) the issue as to whether the depositions were appropriate was distinct from the merits of the action for judicial review; and (4) the issue would become effectively unreviewable later because the harm would occur when the depositions were taken, and there would be no effective remedy available thereafter. *Stevens*, 337 Md. at 479-80, 654 A.2d at 881; *Patuxent Valley*, 300 Md. at 206-07, 477 A.2d at 762-73.

20

Additionally, despite the narrowing language contained in *Dawkins*, *supra*, this Court, relying on our decisions in *Stevens* and *Patuxent Valley*, continues to recognize that discovery orders may be immediately appealed under the collateral order doctrine when those orders seek to probe the individual thought processes of a high level government official acting in an administrative or investigatory decisional capacity. *See Hudson v. Hous. Auth. of Balt. City*, 402 Md. 18, 25, 935 A.2d 395, 399 (2007); *see also Ehrlich*, 396 Md. at 572, 914 A.2d at 797 (recognizing that an interlocutory appeal was appropriate under the "extraordinary circumstances involving discovery orders directed to a high government official."). While the *Hudson* Court ultimately concluded that the collateral order doctrine did not apply under the facts presented, we acknowledged that if the four requirements for the collateral order doctrine are satisfied, then a discovery order that seeks to probe a high level government official's mental processes acting in his or her administrative or decisional capacity, is immediately appealable. *Hudson*, 402 Md. at 24-27, 935 A.2d at 398-400.

We conclude that Petitioners are considered "high level decision makers" and the denial of their assertion of executive privilege through the circuit court's grant of Respondents' sixth motion for sanctions is immediately reviewable by this Court. In considering what constitutes a "high level decision maker" for the appealability of orders denying executive privilege, this Court has held that executive decision making bodies have the ability to appeal orders denying their executive privilege. *See Stevens*, 337 Md. at 479-80, 654 A.2d at 881 (holding that a discovery order requiring the Chief of Police for Montgomery County to be deposed was immediately appealable under the collateral

21

order doctrine because the Chief was a "high level government decision-maker."); *Patuxent Valley*, 300 Md. at 206-07, 477 A.2d at 762-63 (determining that a discovery order requiring individual commissioners at the Public Service Commission to be deposed satisfied the collateral order doctrine because the members were "high level government decision-makers."); *Stein*, 328 Md. at 23, 612 A.2d at 891 (1992) (concluding that "[a]lthough the director of the Baltimore City Department of Social Services is not so high an official as the President of the United States, he or she is nevertheless on a par with the individual Public Service Commissioners" who were the Petitioners in *Patuxent Valley*).

Petitioners fall within this category of high level executive decision makers because members of the Board are appointed by the Governor, with the advice of the Secretary of the Department of Health and Mental Hygiene ("DHMH"), and the advice and consent of the Senate, similarly to commissioners in the Public Service Commission. *Cf.* Health Occ. §14-202(a)(1), *with* Public Utilities Article §2-102(a) ("The [Public Service] Commission consists of five commissioners, appointed by the Governor with the advice and consent of the Senate."). The General Assembly has also delegated to the Board a variety of powers that make it the functional equivalent of a high level executive body. *See, e.g.*, Health Occ. §14-205(a)(1) (granting the Board the power to "[e]nforce [Title 14] and Title 15 in [the Health Occupations Article.]"); Health Occ. §14-205(a)(5) (The Board "[o]versee[s:] (i) [t]he licensing requirements for physicians and the allied health professionals; and (ii) [t]he issuance and renewal of licenses[.]"); and Health Occ. §14-205(a)(8) ("[d]evelop[ing] and implement[ing] methods to: (i) [a]ssess and improve licensee practices; and (ii) [e]nsure the ongoing competence of licensees[.]").

This case is closely analogous to the facts in both *Stevens* and *Patuxent Valley*. Respondents are seeking to obtain discovery that delves into the Board's decision making process. As in both *Stevens* and *Patuxent Valley*, we conclude that this case also satisfies the requirements of the collateral order doctrine. First, the circuit court's order conclusively determined that Petitioners must disclose their pre-decisional deliberations by submitting the audiotapes to Respondents by April 22, 2016. Second, like in *Stevens* and *Patuxent Valley*, this issue is important because of the "potentially great harm to the public by the 'disruption of the governmental process' that can be caused by discovery into the decision making process[]" of a high level executive decision maker. *Stevens*, 337 Md. at 479, 654 A.2d at 881; *Patuxent Valley*, 300 Md. at 206-07, 477 A.2d at 762. Third, the issue in this case concerning Petitioners' deliberative process (executive) privilege is distinct from the merits of Respondents' action seeking damages for an alleged invasion of their privacy. *See, e.g.*, *Ehrlich*, 396 Md. at 572, 914 A.2d at 797 (concluding that "the propriety of a potential intrusion on [executive] privilege[] has nothing to do with the merits of [the plaintiff's] wrongful termination claim."). Fourth, the discovery order will be effectively unreviewable on an appeal from a final judgment because the privilege's protection would be irretrievably lost once Respondents' gain access to the individual decisional thought processes of the Petitioners. *See Patuxent Valley*, 300 Md. at 207, 477 A.2d at 763. Additionally, as this Court noted in *Patuxent Valley*, "[r]egardless of the outcome of the trial, the disruption to the administrative process, caused by placing the officials under pretrial scrutiny, is incurred at the first instance. … [I]t would be impossible to cure the harm done" to Petitioners once the audiotapes are given to Respondents. *Id.*

23

The order granting Respondents' sixth motion for sanctions is a discovery order denying a high level executive decision maker their executive privilege. Accordingly, this Court has the authority to consider the merits of Petitioners' assertion of executive privilege as applied to the audiotapes of their pre-decisional process.

**2. Orders Denying Petitioners' Motion for Reconsideration as to Default Liability and Motion for Protective Order**

The circuit court's order denying Petitioners' motions for reconsideration and for a protective order are not immediately appealable to this Court. While we may have jurisdiction over one interlocutory order under the collateral order doctrine, it does not give us the authority to consider other interlocutory orders that are not independently appealable.

Petitioners conceded before the Court of Special Appeals that a party cannot immediately appeal from an order of default on liability. *See Geier*, 225 Md. App. at 140, 123 A.3d at 616. Petitioners advance the same argument to this Court– that because we have standing to hear their appeal regarding the denial of their executive privilege, this Court has supplementary standing to consider their claims regarding the denial of their quasi-judicial immunity in the orders denying their motions for reconsideration and for a protective order.

As the Court of Special Appeals noted, Maryland Rule 8-131(d) states that "[o]n appeal *from a final judgment*, an interlocutory order *previously* entered in the action is open to review by the Court unless an appeal has previously been taken from that order and decided on the merits by the Court." (emphasis added). As Judge Charles E. Moylan,

24

Jr. observed in *Banashak v. Wittstadt*, "[t]here is scant authority on the question of appellate piggybacking[.]"  167 Md. App. 627, 670, 893 A.2d 1236, 1261 (2006).  We have not precisely addressed the issue of whether an order that is appealable as a final judgment allows other orders, otherwise not appealable, to be heard by an appellate court.  As Judge Moylan noted, the Court of Special Appeals has repeatedly held that "the appealability of each separate issue must be analyzed in a vacuum and that there are no two-for-the-price-of-one bargains on the appellate docket."  *Id*. at 671, 893 A.2d at 1261; *see also Williams v. State*, 17 Md. App. 110, 299 A.2d 878 (1973), *overruled on other grounds by Stewart v. State*, 282 Md. 557, 386 A.2d 1206 (1978) (holding that an order denying a challenge to an array cannot be converted into an appealable order simply because it is joined with an appeal of an interlocutory order that is appealable).

We concluded, *supra*, that none of the orders appealed by Petitioners constitute a final order as defined in Cts. & Jud. Proc. §12-101(f).  Instead, we determined that the order granting Respondents' sixth motion for sanctions is immediately appealable because it satisfied the four-part collateral order doctrine test.  An order that satisfies the collateral order doctrine is not a final judgment, but rather a legal fiction that, under narrow circumstances, allows this Court to consider orders that would otherwise not be appealable at the time they are entered.  *See Ehrlich*, 396 Md. at 562, 914 A.2d at 791 (quoting *Dawkins*, 376 Md. at 63, 827 A.2d at 121); *see also Snowden v. Balt. Gas & Elec. Co.*, 300 Md. 555, 560 n. 2, 479 A.2d 1329, 1331 n. 2 (1984).  The collateral order doctrine is only applicable in narrow and extraordinary circumstances.  *See Ehrlich*, 396 Md. at 562, 914 A.2d at 791 (referring to collateral doctrine orders as a "narrow class of orders[,]"

25

and as a doctrine that is applicable only "in a very few … extraordinary situations"); *see also Dawkins*, 376 Md. at 58-59, 827 A.2d at 118 (noting that the collateral order doctrine "is a very limited exception to the principle that only final judgments terminating the case in the trial court are appealable," and that the requirements for the collateral order doctrine are "strictly applied" and "entertained only in extraordinary circumstances.") (citations omitted); *Stevens*, 337 Md. at 477, 654 A.2d at 880 (recognizing that the collateral order doctrine applies to "a narrow class of orders … which are offshoots of the principal litigation in which they are issued and which are immediately appealable as 'final judgments' without regard to the posture of the case.") (citations omitted).

As the Court of Special Appeals explained, "in a permissible, interlocutory appeal under the collateral order doctrine, it would make no sense to allow the parties to contest every other order in the case as though there had been a conventional final judgment." *Geier*, 225 Md. App. at 141, 123 A.2d at 617. Further, the Court concluded that it "would be absurd to say that, in an appeal that is permissible only if the subject matter is 'completely separate from the merits of the action,' the appellate court may proceed to consider and decide every interlocutory ruling pertaining to the merits of the case." *Id.* We agree with the Court of Special Appeals' assessment that due to the narrow purpose of the collateral order doctrine, orders that do not independently satisfy the four-part test may not be appealed by "piggybacking" onto another interlocutory order that does satisfy the test. Therefore, the two additional orders are not properly before this Court.

### i. Order denying Petitioners' Motion for Reconsideration for Default as to Liability is Not Immediately Appealable

It is well-established that an order of default is not an "unqualified, final disposition of the matter" because an assessment of damages is still required. *Franklin Credit Mgmt. Corp. v. Nefflen*, 436 Md. 300, 321, 81 A.3d 441, 453 (2013) *see also Curry v. Hillcrest Clinic, Inc.*, 337 Md. 412, 425-27, 653 A.2d 934, 940-41 (1995) (holding this Court's decision in *Banegura v. Taylor*, *see infra*, was dispositive in concluding that there is no final judgment in an order for default until damages have been assessed); *Banegura v. Taylor*, 312 Md. 609, 618, 541 A.2d 969, 973 (1988) (holding that an entry of an order of default, leaving damages open for a future trial, was not a final judgment, and could not be immediately appealed); *Adams v. Mallory*, 308 Md. 453, 461, 520 A.2d. 371, 375 (1987) (concluding that an order entering a judgment default of liability that did not determine any relief was not a final judgment). Additionally, this Court in *Banegura* concluded that the denial of the defendant's motion to strike the default order was interlocutory and not appealable because it did not dispose of the entire claim. *Banegura*, 312 Md. at 618, 541 A.2d at 973-74.

We conclude that the circuit court did not abuse its discretion in denying Petitioners' motion for reconsideration of default as to liability.

### ii. Order Denying Petitioners' Motion for Protective Order is Not Immediately Appealable

The circuit court's denial of Petitioners' motion for a protective order from Respondent's sixth motion to compel documents is not properly appealable under the collateral order doctrine.

After creating the general rule in *Dawkins*, *see supra*, we declined to determine "[w]hether, and under what circumstances, interlocutory orders overruling immunity defenses asserted by the Governor, Lieutenant Governor, Comptroller, Treasurer, Attorney General, Speaker of the House, President of the Senate, or judges *as defined in Article IV §2*, of the Maryland Constitution, are immediately appealable under the collateral order doctrine…." *Dawkins*, 376 Md. at 65, 827 A.2d at 122 (emphasis added). This Court purposefully left open the possibility that in cases where privilege is denied to one of the specified positions above, an appellate court may have the authority to consider the interlocutory order denying the privilege under the collateral order doctrine.

As *Dawkins* made clear "[i]nterlocutory trial orders overruling immunity claims by… agencies … are not appealable under this doctrine." *Id.* at 65, 827 A.2d at 122. Additionally, this Court concluded that only judges defined by Article IV, §2 in the Maryland Constitution are eligible for the exception to the rule. Article IV, §2 states:

> The Judges of all of the said Courts shall be citizens of the State of Maryland, and qualified voters under this Constitution, and shall have resided therein not less than five years, and not less than six months next preceding their election, or appointment, as the case may be, in the city, county, district, judicial circuit, intermediate appellate judicial circuit or appellate circuit for which they may be, respectively, elected or appointed. They shall be not less than thirty years of age at the time of their election or appointment, and shall be selected from those who have been admitted to practice Law in this State, and who are most distinguished for integrity, wisdom and sound legal knowledge.

Md. Const. Art. IV, §2. The Health Occupations Article states, "[t]he Board [of Physicians] shall consist of 22 members appointed by the Governor with the advice of the Secretary [of DHMH] and the advice and consent of the Senate." Health Occ. §14-

28

202(a)(1). The General Assembly did not intend for Petitioners to be considered Article IV judges, but rather as a quasi-judicial body within an administrative agency that has powers independent of the Maryland judiciary. The language in *Dawkins* is dispositive as it relates to the absolute judicial privilege, and we therefore decline to consider the four requirements of the collateral order doctrine.[16]

We conclude that the circuit court did not abuse its discretion in denying Petitioners' motion for a protective order from Respondents sixth motion to compel documents.

### c. Waiver

Petitioners' claim of deliberative process (executive) privilege regarding the production of the audiotapes is not "stale," as Respondents argue, because there is insufficient evidence that at the time the November 25, 2013 order was entered, Petitioners were aware of the existence of the audiotapes. Accordingly, the circuit court erred in finding that Petitioners had waived their executive privilege in granting Respondents' sixth motion for sanctions.

---

[16] Petitioners, in their response to Respondents' motion to dismiss, rely on *Gill v. Ripley* as evidence that this Court has recognized that absolute quasi-judicial privilege applies to Executive Branch officials engaged in quasi-judicial acts "because their judgments are 'functional[ly] comparab[le]' to those of judges– that is, because they, too 'exercise a discretionary judgment' as part of their function." 352 Md. 754, 762, 724 A.2d 88, 92 (1999). The case that Petitioners cite pre-dated our holding in *Dawkins*. Because this Court finds that *Dawkins'* limitation on appealing orders denying judicial immunity claims from agencies is controlling, we decline to consider the holding in *Gill v. Ripley* in the context of this case.

Respondents contend that the motion for sanctions did not compel the Petitioners to disclose the audiotapes. Instead, Respondents argue that the order that compelled the production of the audiotapes was entered on November 25th by the circuit court judge when the judge denied Petitioners' assertion of executive privilege and compelled Petitioners to comply with Respondents' requests for documents. Petitioners did not appeal that order. Based on the Petitioners' failure to appeal the November 25 order, Respondents aver that Petitioners cannot now bring an appeal for the denial of their executive privilege because they should have brought that appeal when the November 25th order was entered. Respondents' argument is a distinction without a difference. Although the order before this Court is based on an order for discovery sanctions for failing to produce the audiotapes, the effect of the order would still require Petitioners to produce the audiotapes on the basis of enforcing the prior order to compel from November 25th.

Additionally, in his ruling regarding the sixth motion for sanctions, the circuit court judge determined that Petitioners had not timely objected to the disclosure of the audiotapes in their response to Respondents' first request for documents, and failed to include the audiotapes in any privilege logs.[17] Upon that basis, the circuit court judge concluded that Petitioners' request for executive privilege was waived, in granting Respondents' sixth

---

[17] In the circuit court hearing on March 24, Respondents asserted that they had also made similar requests for documents encompassing the audiotapes in their third and fifth requests for documents; however, those document requests are not included in the record, only Petitioners' responses to those requests, and the responses did not include the original request. This Court, therefore, does not have a proper record that would allow us to review this evidence for the purposes of waiver.

30

motion for sanctions. A review of the record reflects that Petitioners asserted the executive privilege in their response to Respondents' first request for documents, request for Production No. 7, which stated: "Objection … the communications are also being withheld from [Respondents] pursuant to the deliberative privilege since disclosing them would reveal [Petitioners] deliberative, predecisional thoughts."

Further, there is insufficient evidence in the record to indicate whether Petitioners were aware of the existence of the audiotapes prior to July 29, 2014.[18] Respondents argue that Petitioners knew about the recordings prior to when they acknowledged their existence in August 2014. Respondents base this contention on depositions taken in July 2014, where several of the individual Petitioners acknowledged that their meetings are recorded and audiotapes existed pertaining to the Board's meetings regarding Respondents. Although Respondents contend that Petitioners purposefully hid the existence of the audiotapes from them until August 2014, they have provided no evidence that, prior to July 2014, the Petitioners were aware of the existence of the audiotapes or where the audiotapes were located. As this Court noted in *Ehrlich*,

> [a]lthough it is preferred that responses to document requests be as accurate as possible and are complied with as soon as possible in the discovery process, it is unrealistic to require an entity as large as the Executive Branch to know and to name precisely what documents are protected by [privilege] when they are collecting and sorting tens of thousands of documents in the early stages of litigations with such broad discovery requests of this nature.

---

[18] On July 29, 2014, Petitioner Christine Farelly stated in her deposition testimony that the deliberations of the Board were recorded.

396 Md. at 575-76, 914 A.2d at 799. Similarly, in this case, at the time that Respondents filed their first request for documents, and subsequently, Petitioners were coordinating and obtaining information and documents from twenty-five separate individual defendants, in addition to the documents the Board had in its possession. Respondents even note in their brief to this Court that on January 8, 2014, Petitioners' counsel notified Respondents that they were in the process of scanning and reviewing fourteen additional boxes of documents that were potentially responsive to Respondents' August 1, 2013 document requests. Absent evidence that Petitioners purposefully concealed the existence of the audiotapes from Respondents, and in light of evidence that Petitioners timely asserted their executive privilege in response to Respondents' document requests, this Court concludes that Petitioners' assertion of executive privilege was not waived.

## II. Deliberative Process (Executive) Privilege

In *Hamilton v. Verdow*, this Court considered whether the deliberative process (executive) privilege applied to an investigative report written by Judge Wilner for the Governor's Office that plaintiffs sought to obtain through discovery. 287 Md. 544, 414 A.2d 914 (1980). This Court determined:

> There are two reasons for preserving the confidentiality of intragovernmental documents reflecting advisory opinions, recommendations and deliberations comprising parts of the process by which governmental decisions and policies are formulated: (1) to encourage aides and colleagues to give completely candid advice by reducing the risk that they will be subject to public disclosure, criticism and reprisals; (2) to give the President or other officer the freedom 'to think out loud,' which enables him to test ideas and debate policy and personalities uninhibited by the danger that his tentative but rejected thoughts will become subjects of public discussion.

287 Md. at 558, 414 A.2d at 922 (citing Archibald Cox, *The Executive Privilege*, 122 U.PA.L.REV. 1383, 1410 (1974)).  We noted that the executive privilege "gives a measure of protection to the deliberative and mental process of decision-makers[,]" *id.* at 561, 414 A.2d at 924, but that the privilege differs from other evidentiary privileges because "[i]t is for the benefit of the public and not the government officials who claim the privilege …. [It] attempts to accommodate the competing interests of a just resolution of legal disputes with the need to protect certain confidential communications." *Id.* at 565, 924-25 (citations omitted).

Where there has been an allegation of government misconduct, we have held a balancing process must be utilized, "weighing the need for confidentiality against the litigant's need for disclosure and the impact of nondisclosure upon the fair administration of justice."  *Id.* at 563, 925; *see also Ehrlich*, 396 Md. at 568, 914 A.3d at 794 (quoting *Hamilton* for the proposition that "courts have engaged in a balancing process, weighing the need for confidentiality against the litigant's need for disclosure and the impact of nondisclosure upon the fair administration of justice."); *Office of Governor v. Wash. Post Co.*, 360 Md. 520, 558, 759 A.2d 249, 270 (2000) (quoting the balancing process espoused in *Hamilton*).  Additionally, this Court has held that when a government official makes a formal claim of executive privilege for confidential communications "of an advisory or deliberative nature, there is a presumptive privilege, with the burden upon those seeking to compel disclosure[]" to overcome the presumption.  *Hamilton*, 287 Md. at 563, 414 A.2d at 925 (citations omitted); *see also Ehrlich*, 396 Md. at 567-68, 914 A.3d at 794 (quoting *Hamilton*); *Office of Governor*, 360 Md. at 558, 759 A.2d at 270 (quoting *Hamilton*);

33

*Prince George's County. v. The Wash. Post Co.*, 149 Md. App. 289, 319, 815 A.2d 859, 876 (2003) (quoting *Hamilton*).

In weighing Petitioners' need for confidentiality, we conclude that preventing the disclosure of Petitioners' pre-decisional deliberations greatly benefits the public by allowing Petitioners to undertake their core public protection function without the constant threat of harassment and intimidation by aggrieved parties. As noted in *Hamilton*, "it is apparent from the very nature of government that a legitimate necessity exists for the protection from public disclosure of certain types of official information." 287 Md. at 556, 414 A.2d at 921. The *Hamilton* Court concluded that "[t]he necessity for some protection from disclosure clearly extends to confidential advisory and deliberative communications between officials and those who assist them in formulating and deciding upon future governmental action. A fundamental part of the decisional process is the analysis of different options and alternatives." *Id.* at 558, 414 A.2d at 922.

Petitioners were empowered by the General Assembly to, among other things: enforce Title 14 and Title 15 in the Health Occupations Article; oversee the licensing requirements for physicians and allied health professionals; review and preliminarily investigate complaints; develop and implement methods to assess and improve licensee practices and ensure the ongoing competence of licensees; and make recommendations that benefit the health, safety, and welfare of the public. Health Occ. §14-205(a)(1)(5)(7)(8)(13). The General Assembly also explicitly authorized Petitioners to "issue a cease and desist order or obtain injunctive relief against an individual

34

for…[p]racticing medicine without a license ….” Health Occ. §14-206(e)(1).[19] The General Assembly clearly intended to afford Petitioners considerable discretion in carrying out their duties under the Health Occupations Article, including the express authority to issue cease and desist orders. We conclude that Petitioners raised a valid claim of executive privilege that weighs against the disclosure of the audiotapes to Respondents. Respondents, therefore, bear the burden of overcoming the presumption of executive privilege. Respondents, however, failed to provide any substantive argument that states their basis for seeking the disclosure of the audiotapes in litigating their claims of invasion of privacy against Petitioners.

The last consideration the *Hamilton* balancing process requires is an analysis of the impact that nondisclosure will have on the “fair administration of justice.” 287 Md. at 563, 414 A.2d at 925. Because Respondents have not articulated any specific necessity for access to the audiotapes, the nondisclosure will not impact the fair administration of justice. Therefore, we hold that the audiotapes are protected under the executive privilege and are not discoverable by Respondents.

## CONCLUSION

In summary, this Court does not have appellate jurisdiction over Petitioners’ appeal regarding the interlocutory orders denying Petitioners’ motion for reconsideration and

---

[19] COMAR 10.32.02.06 (B)(2) (as effectuated at the time Petitioners published the cease and desist order) states, “[d]uring the course of the investigation of the complaint, the Board may issue a nonpublic cease and desist order. At the conclusion of an evidentiary hearing, the administrative law judge may recommend a public cease and desist order in addition to a penalty.”

motion for a protective order, because neither order independently satisfies the collateral order doctrine. However, we do have appellate jurisdiction over the order granting Respondents' sixth motion for sanctions because it is a discovery order that denied the assertion of executive privilege to a "high level decision maker."

We conclude that Petitioners' assertion of the executive privilege was not waived because Petitioners properly asserted the privilege throughout the discovery process, and Respondents failed to demonstrate that prior to July 29, 2014, Petitioners were aware of the existence of the audiotapes in dispute.

Finally, we hold that because Respondents failed to assert any basis for seeking discovery of the audiotapes, and this Court determined that strong public policy concerns support protecting Petitioners' deliberative process, the circuit court abused its discretion in granting Respondents sixth motion for sanctions.

**MOTION TO DISMISS RELATIVE TO THE DENIAL OF PETITIONERS' MOTIONS FOR RECONSIDERATION AND FOR PROTECTIVE ORDER GRANTED. ORDER OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY GRANTING RESPONDENTS' SIXTH MOTION FOR SANCTIONS REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED EQUALLY BETWEEN PETITIONERS AND RESPONDENTS.**

Circuit Court for Montgomery County
Case No.: 371761V
Argued: September 9, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 11

September Term, 2016

MARYLAND BOARD OF
PHYSICIANS, et al.

v.

MARK R. GEIER, PERSONAL
REPRESENTATIVE OF THE ESTATE
OF ANNE GEIER, et al.

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Hotten,
Getty,
Battaglia, Lynne A.
(Senior Judge, Specially Assigned),

JJ.

Dissenting Opinion by Adkins, J.

Filed: January 23, 2017

Respectfully, I dissent. This appeal is a premature, interlocutory appeal from an order imposing sanctions for the failure to produce discovery documents. The Majority is wrong to treat this sanctions order as an appeal from the denial of a properly asserted deliberative process privilege. An appeal from an order for sanctions is generally not an allowable interlocutory appeal. *See Newman v. Reilly*, 314 Md. 364, 385 (1988); *Yamaner v. Orkin*, 310 Md. 321, 326–27 (1987). In *Yamaner*, we denied a party's attempted appeal of a sanctions order because it did not meet the requirements of the collateral order doctrine. *Yamaner*, 310 Md. at 326–27. This attempted appeal of the trial court's sanctions order should be similarly denied.

Maryland Rule 2-422(c) requires the following response to a request for discovery of documents:

> The response shall state, with respect to each item or category, that (1) inspection and related activities will be permitted as requested, (2) the request is refused, or (3) the request for production in a particular form is refused. **The grounds for each refusal shall be fully stated. If the refusal relates to part of an item or category, the part shall be specified**.

(Emphasis added.) Applying an earlier version of Rule 2-422, we have explained:

> When under an appropriate Maryland Rule a party demands of another discovery of a document or other tangible thing, the adversary, **even though resisting the demand, should nonetheless be required to specifically answer whether it has in its possession or under its control such an item or items.**

*Kelch v. Mass Transit Admin.*, 287 Md. 223, 228 (1980) (emphasis added).

The use of privilege logs is a customary practice in Maryland, and complies with the Rule 2-422(c) requirement that the "grounds for each refusal shall be fully stated" and

that "[i]f the refusal relates to part of an item or category, the part shall be specified."  So, the Board was required to identify what it claimed was privileged and what it did not.  Md. Rule 2-422.  We have explained that "the application of sanctions under the discovery rules is within the sound discretion of the trial judge."  *Broadwater v. Arch*, 267 Md. 329, 336 (1972) (citation omitted); *see Ehrlich v. Grove*, 396 Md. 550, 560 (2007) (discovery matters are within the discretion of the trial court).  Thus, the trial court was well within its rights to find a waiver of the privilege, order the production of the audio recordings, and impose a sanction on the Board.

The Majority resurrects the deliberative process privilege waived by Petitioners, both ignoring the abuse of discretion standard of review for discovery decisions and creating a new rule that merges orders for production with orders for sanctions after a failure to produce.  The Majority holds, with no cited authority, that "[a]n order granting discovery sanctions qualifies as a 'discovery order' for the purposes of determining the appealability of an order denying executive privilege under the collateral order doctrine."  Maj. Slip Op. at 18.  In so holding, the Majority disregards—**and tells government litigants to disregard**—the Rule 2-422 requirements for identifying specifically which parts of a discovery request are sheltered from discovery and for what reason.

We have recognized that when a government is a party to litigation, "a question of unfair litigation advantage may arise."  *Hamilton v. Verdow*, 287 Md. 544, 564 n.8 (1980).  Here, rather than protecting against such unfair advantage, the Majority leans the opposite way, sending the message that a governmental party may, with impunity, ignore discovery requests for months at a time and wait until the eleventh hour to identify what items fall

2

within its claimed privilege. The Board did exactly that, and the Majority enables its behavior by permitting this interlocutory appeal, and then overturning the trial court's discretionary determination that Petitioners had waived the privilege.

The Board's conduct at issue on this appeal is merely one example of their discovery abuses. In December 2014, the trial court described the Board's foot-dragging thus far, saying: "The deadlines in this case have been moved repeatedly because of discovery problems, due to the conduct of the Board and its inability, or in some cases outright **refusal, to produce documents or accurate privilege logs in a timely fashion**." (Emphasis added.) It concluded that the Board delayed document production for seven months *after* an order that it do so:

> To say that discovery in this case has not proceeded smoothly would be an understatement. [Respondents'] first motion for sanctions, which the court granted, was the result of the Board's production of fourteen boxes of documents many months after the court ordered their production on November 25, 2013. Although the original request for production was issued on August 1, 2013, the Board did not make its final production of responsive documents until June 2, 2014.

It also found that the Board's designated representative "fail[ed] to appear for a properly noticed organizational deposition," and that, on a rescheduled date, she was present but entirely unprepared.

What is at stake here is more than a meaningless discovery slug-fest. The audio recordings in question are highly relevant to Respondents' claim for invasion of privacy. In order to prevail, they must show malice to defeat the immunity given to the Board members and their agents by statute. Md. Code (1990, 2013 Repl. Vol.), § 5-715(b) of the

3

Courts and Judicial Proceedings Article. The internet publication of highly sensitive medical information about a physician and his family is sufficiently unusual and unnecessary that one might wonder why a professional oversight agency did not know better. What went on behind the scenes of the decision to publish is exactly what Respondents need to know. If they are denied this information they are severely hampered in pursuit of their claim. If the audio recordings are protected by a valid deliberative process privilege, then Petitioners should have identified them specifically, and claimed the privilege on a timely basis. It is not up to this Court to protect the Board and its members from their discovery abuses.

Circuit Court for Montgomery County
Case No. 371761V
Argued: September 9, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 11

September Term, 2016

———————————————————

MARYLAND BOARD OF
PHYSICIANS, et al.

v.

MARK R. GEIER, PERSONAL
REPRESENTATIVE OF THE ESTATE
OF ANNE GEIER, et al.

———————————————————

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Hotten,
Getty,
Battaglia, Lynne A.
(Senior Judge, Specially Assigned)

JJ.

———————————————————

Concurring and Dissenting Opinion
by McDonald, J.

———————————————————

Filed:     January 23,  2017

I agree with the Majority opinion to the extent that it addresses the merits of this appeal. I would, however, go farther and address the question of immunity. This Court has adopted from federal practice the collateral order doctrine – a doctrine that provides for consideration of certain interlocutory appeals. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545-47 (1949); *Peat, Marwick, Mitchell & Co. v. Los Angeles Rams Football Co.*, 284 Md. 86, 91-92 (1978); *State v. Hogg*, 311 Md. 446, 455-57 (1988). However, this Court later deviated from the federal version of that doctrine when it overruled *Hogg* and declined to consider an appeal of an order denying official immunity, except in certain instances (which the Court did not well define). *Compare Dawkins v. Baltimore City Police Dep't.*, 376 Md. 53 (2003) *with Mitchell v. Forsyth*, 472 U.S. 511 (1985) *and Behrens v. Pelletier*, 516 U.S. 299 (1996). The Court of Special Appeals has applied an exception to allow an appeal of an adverse ruling on immunity relating to the alleged actions of a court clerk – an official with less decision-making authority than the Board members in this case. *See State v. Keller-Bee*, 224 Md. App. 1, 5-7 (2015), *aff'd*, 448 Md. 300 (2016). In my view, *Dawkins* should be reconsidered.